GRAHAM et ux. v. NATIONAL SURETY CO.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1917.)

No. 4687.

1. HOMESTEAD ⬅118(5)—CONVEYANCE—VALIDITY.
    Under Gen. St. Minn. 1913, § 6961, declaring that if the owner be married no mortgage of a homestead except for purchase money unpaid thereon, nor any sale or other alienation thereof will be valid without the signature of both husband and wife, a conveyance by a husband or wife without the spouse joining is void as to the homestead though it may be valid as to other property included therein.

2. DESCENT AND DISTRIBUTION ⬅52(2)—SURVIVING WIFE—RIGHTS OF.
    Where land mortgaged by a husband alone was sold on judicial sale before his death, his widow will not, under Gen. St. Minn. 1913, § 7238, relating to descent and distribution, take any interest therein.

3. EVIDENCE ⬅451, 452—PAROL EVIDENCE RULE.
    Parol evidence is admissible to explain a latent ambiguity in a deed, though not to explain a patent ambiguity, for that would practically abolish the sanctity of deeds.

4. EVIDENCE ⬅462—PAROL EVIDENCE RULE—ADMISSIBILITY.
    A firm of contractors suffered considerable loss on a contract, the performance of which was guaranteed by plaintiff surety company. Thereafter one of the partners and his wife executed a trust deed in favor of plaintiff surety, reciting that the property should be held in trust for the purpose of securing the surety against any and all liability of

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

every kind that may arise by reason of any bond or indemnity of any kind or nature which the surety may hereafter execute indemnifying or securing, or in any manner obligating it to pay as surety or otherwise any sum of money on account of any contract of the contracting firm. The partner's wife had declined to sign a deed of trust upon the family domicile for any past indebtedness, but she executed the above deed of trust which was prepared by the surety. After execution of the deed of trust, the trustee gave indemnifying bonds to firm creditors who were induced to accept firm notes payable in one year for the claims arising under the contract. *Held,* that the deed of trust was ambiguous, and parol evidence was admissible to show its scope as to the wife.

5. HOMESTEAD ⬅115(1)—DEEDS OF TRUST—CONSTRUCTION.

In such case, as the trust deed should be most strongly construed against the trustee, it having been prepared by it, and as its agent knew of the wife's refusal to sign a deed which should subject her homestead to claims for past indebtedness, the homestead is not, despite the execution of new bonds which covered the past indebtedness, and the surety's satisfaction of claims arising on such bonds, subject to foreclosure under the deed of trust.

6. MORTGAGES ⬅114—DEEDS OF TRUST—CONSTRUCTION.

In such case, as the husband and partner consented to subjecting his homestead to past indebtedness, and as he could validly incumber other portions of his real property without the consent of the wife, such deed of trust is valid as to property other than the homestead, the husband having after the execution of the trust deed consented to the trustee's construction by executing notes for the past indebtedness to secure payment of which the trustee executed new bonds, this being particularly true as the lands were located in Minnesota, and Gen. St. Minn. 1913, § 7907, declaring that any judgment of the federal District Court shall become a lien on such lands of the judgment debtor as are located in the county where it is docketed and lands in any other county when duly docketed with the clerk of the district court in the county in which they are located, made the judgment against the husband a lien on such lands.

7. SUBROGATION ⬅7(1)—SURETY—RIGHT TO.

A surety paying an obligation of the principal is entitled to be subrogated to the rights of creditors.

Hook, Circuit Judge, and Amidon, District Judge, dissenting in part.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by the National Surety Company, a corporation, against David Graham and Mrs. Minnie A. Graham. From a decree for plaintiff, defendants appeal. Reversed and remanded, with directions to dismiss as to Mrs. Minnie A. Graham and to grant a decree of foreclosure against David Graham.

M. E. Louisell, of Duluth, Minn. (Victor L. Power, of Hibbing, Minn., on the brief), for appellants.

Oscar Mitchell, of Duluth, Minn. (W. D. Bailey and A. C. Gillette, both of Duluth, Minn., on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. June 28, 1910, a copartnership composed of David Graham and John J. Young, under the firm name of Graham-Young Company, entered into a written contract to build a high

school in Gilbert, Minn., with district township No. 18 of St. Louis county, in that state, for $87,992. On July 27, 1910, the Graham-Young Company gave to the school district a bond in the sum of $87,992, being the full amount of the contract price, for the performance of said contract, with the National Surety Company as surety. The bond contained the following provisions:

"Now therefore, if the said principals shall pay as they become due all just claims for all work, tools, machinery, skill and materials furnished under said contract and shall complete said contract in accordance with its terms and shall save the obligee harmless from all costs and charges that may accrue on account of the doing of the work specified in said contract and shall comply with all laws appertaining thereto, then this obligation shall be void, otherwise to remain in full force and effect.

"This bond is given for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery or materials, under or for the purpose of this contract."

Thereupon the Graham-Young Company entered upon the performance of said contract. As the building was nearing completion, it became manifest they were going to lose heavily on the contract. A meeting of the creditors was called by Mr. John C. Bennett, the superintendent of claims of the surety company for the territory that included Minnesota. An arrangement was then made that the balance in the hands of the school district should be paid pro rata to the creditors and that they should extend the time of payment of the balance for one year at 7 per cent. After crediting the amount then in the hands of the school district, there was due in the aggregate by the Graham-Young Company to their creditors on this building $13,567.71. On April 28, 1911, David Graham and his wife executed a trust deed to the National Surety Company of lots 4 and 5, block 3, Southern addition to Hibbing, according to the recorded plat thereof, and lots 2 and 3, of section 30, in township 59 north, of range 22 west, all of the above described lands being in St. Louis county, and the east half of northeast quarter of section 25, in township 59 north, of range 23 west, in Itasca county, all in the state of Minnesota. This trust deed was upon the following conditions:

"The above-described property is conveyed by the parties of the first part to the party of the second part to be held in trust for the purpose of securing the party of the second part against any and all liability of every kind and nature that may arise by reason of any bond of indemnity or other instrument of security of any kind or nature which the party of the second part may hereafter execute, indemnifying or securing, or in any manner obligating itself to pay as surety or otherwise, any sum of money on account of any contract, agreement or obligation of Graham-Young Company, a copartnership consisting of said David Graham and one John J. Young, it being understood and agreed, however, that the party of the second part does not, by accepting this security, obligate itself in any manner to execute any bond of indemnity, or other instrument of security for the said Graham-Young Company."

The National Surety Company brought suit to foreclose said trust deed in the United States District Court, and after a trial a decree was entered, September 9, 1915, that the surety company was entitled to $17,312.73 and interest and costs, and that the property described in the trust deed be sold to satisfy said claim, and the de-

fendants in that suit, David Graham and Minnie A. Graham, his wife, appeal.

It appears that subsequent to the execution of this trust deed and on July 1, 1911, Mr. David Graham, in the name of the Graham-Young Company, executed notes to the various creditors on the Gilbert schoolhouse to the aggrete amount of $13,567.71 bearing 7 per cent. interest, and the firm of Graham-Young Company, by David Graham, and the National Surety Company, as surety, gave a bond of indemnity to each of said creditors that his note would be paid within one year of its date. The Graham-Young Company failed to pay any of the said notes, and the surety company was compelled to do so, and upon these payments the decree of the District Court is based.

The surety company was liable immediately for the whole of these claims upon its original bond which is conceded was not within the terms of the trust deed, and the principal question is as to whether by extending its liability for a year and agreeing to pay 7 per cent. interest the new bonds were bonds it "may hereafter execute," as provided in the trust deed. It appears that the trust deed covers lots 4 and 5 in block 3, Southern addition to Hibbing. Upon these lots is the homestead of the parties, and it has been actually occupied by them as such for twelve years or more.

[1] It was provided by section 3456 of the Revised Laws of Minnesota of 1905, now section 6961 of the General Statutes of Minnesota of 1913, that:

"If the owner be married, no mortgage of the homestead, except for purchase money unpaid thereon, nor any sale or other alienation thereof shall be valid without the signatures of both husband and wife."

Under this statute while a conveyance of a homestead by the husband or wife without the spouse joining is void as to the homestead, if other property be included in the same deed the instrument is not void as to such other property. Coles v. Yorks, 31 Minn. 213, 17 N. W. 341; Weitzner v. Thingstad, 55 Minn. 244, 56 N. W. 817.

[2, 3] Mr. David Graham testified: That he first had a talk with Mr. Bennett on the subject of the trust deed at Hibbing; that:

"The first time that Mr. Bennett put the proposition up to me, he outlined the trust deed to cover past indebtedness incurred by the Graham-Young Company and also to cover future business so as we could go along and do business in the future. He stated that my wife would have to sign the instrument. * * * I told Mr. Bennett that I would take the matter up with my wife, and if she would sign a deed of that kind I would do so—I was positive we could go ahead and make good. There was a lot of big contracts that were to be let on some buildings, and we thought we would stand a good show in getting those contracts. I told my wife what Mr. Bennett told me. She absolutely refused to sign any trust deed of that kind but would sign one for future business—promised to sign one if it was made to cover future business. In regard to past indebtedness she said this: 'In case you wouldn't be able to make good this is my home—we have to raise our children, and I am going to protect them.' She said at that time that she positively refused to sign any deed that would cover past indebtedness."

Mrs. Minnie A. Graham testified:

"I had a talk about this trust deed before signing it with Mr. Graham, my husband. He asked me to sign a trust deed that would cover all past indebt-

edness and also the future. He asked me to do that at my home in Hibbing. Mr. Graham told me that Mr. Bennett said if I would sign this trust deed to cover past indebtedness he was sure that they would make good as there was another contractor that had made good and he was sure he could make good for me. I told Mr. Graham that then I would sign away everything and I did not like to sign away our home. * * * I said then our children came first and I refused to sign it."

Both Mr. Graham and Mr. Young testified that this was all communicated to Mr. Bennett at Duluth on the day of the meeting of the creditors there, and Mr. Bennett frankly admits that Graham so told him. After the meeting of the creditors, Mr. Bennett and Mr. Graham went to a lawyer's office in Duluth who was employed by Mr. Bennett for the surety company, and this lawyer drew the deed of trust in question. There is nothing in the record which in any way reflects upon him. Mr. Graham then took the deed home and told his wife that this deed was so drawn up as to cover future business. Mrs. Graham testified that her husband so told her and she then read the instrument, and, believing that it covered only future indebtedness and did not have anything to do with past indebtedness, she signed it.

It is strenuously contended that the evidence on this subject was inadmissible to vary the terms of a written instrument. We have no desire to in any manner infringe upon the well-settled and salutary rule upon that subject and do not deem it necessary to review the authorities thereon. The real question is whether the case is within the equally well-recognized exception to this rule on ambiguities and, if it is, what is the situation of the parties?

Under the laws of Minnesota, David Graham alone could have executed the trust deed in question as to all but the homestead, and if the property was sold on judicial sale before the death of the husband his widow would take no interest in it. Revised Laws of Minnesota, 3648; General Statutes of Minnesota, 7238.

The case therefore presents the question as to whether the trust deed should be construed to cover at all liabilities incurred upon bonds executed subsequent to the date of the trust deed to secure a pre-existing liability of the National Surety Company. That is, as to such liability was it a binding obligation as to either David Graham or his wife Minnie A. Graham? If the last question should be answered in the affirmative as to either of the defendants, should it be so answered as to both? Assuming the obligation to be a valid one as to one or both of the defendants, was it valid as to their homestead?

In Greenleaf on Evidence (16th Ed.) § 297, it is stated:

"It may be proper to consider the case of ambiguities, both latent and patent. The leading rule on this subject is thus given by Lord Bacon: 'Ambiguitas verborum latens verificatione suppletur; nam quod ex facto oritur ambiguum, verificatione facti tollitur.' Upon which he remarks that: 'There be two sorts of ambiguities of words; the one is ambiguitas patens and the other latens. Patens is that which appears to be ambiguous upon the deed or instrument; latens is that which seemeth certain and without ambiguity, for anything that appeareth upon the deed or instrument; but there is some collateral matter out of the deed that breedeth the ambiguity. Ambiguitas patens is never holpen by averment; * * * for that were to make all deeds hollow and subject to averments, and so, in effect, that to pass without deed which

the law appointeth shall not pass but by deed. Therefore, if a man give land to J. D. and J. S. et hoeredibus, and do not limit to whether of their heirs, it shall not be supplied by averment to whether of them the intention was (that) the inheritance should be limited.' 'But if it be ambiguitas latens, then otherwise it is; as if I grant my manor of S. to J. F. and his heirs, here appeareth no ambiguity at all. But if the truth be, that I have the manors both of South S. and North S., this ambiguity is matter in fact; and therefore it shall be holpen by averment, whether of them it was that the party intended should pass.' "

In Wigmore on Evidence, § 2472, it is said:

"Declarations of intention, though ordinarily excluded from consideration, are receivable to assist in interpreting an equivocation; that is, a term which, upon application to external objects, is found to fit two or more of them equally. This rule dates at least as far back, in recognition, as Lord Coke's time; the only difference being that it was then the sole permissory exception to a general prohibitory rule against looking at any extrinsic circumstances (as noticed ante, section 2470), while now it is a permissory exception to a prohibitory rule which is itself an exception (ante, section 2471) to a general permissory rule.

"The reason for the present exception to that exception is plain enough. The original prohibitory exception is based on the risk of allowing an extrinsic utterance of intent to come into competition with the terms of the document on the same subject, and perhaps to prevail against them (ante, section 2471). Now in the case of an equivocation this risk does not exist. Since the term of the document describes equally two objects, and since it was used to designate one only, there can be no competition with the words of the document by declarations which merely expand and make more specific those words. The sense of the words can be interpreted without restriction, because the data offered cannot be used for any purpose but that of interpretation. Hence the reason for the original prohibitory rule falls away, and the general principle of interpretation resumes its full range."

In Chamberlayne on the Modern Law of Evidence, in section 2654, it is said:

"An ambiguity in a contract may be so (by unsworn statements) explained."

In Rice on Evidence, vol. 1, p. 276, it is said:

"A latent ambiguity created by parol proof is open to explanation, and this in no sense infringes upon the rule that a written contract cannot be altered by parol, but that such writing is to be deemed to express the intent of the parties; where such an ambiguity is created by the parol evidence in the case it may be explained by any evidence, written or unwritten, within the reach of the parties."

See Jones on Evidence, § 453 et seq., Id., §§ 472 and 473.

[4] The trust deed recited that it was given to secure the surety company against all liability that may arise on any bond it may hereafter execute. That seems plain and unambiguous, but when it appears that the surety company had previously executed a bond upon which its liability had arisen in the past and after the execution of the trust deed it in effect renewed the old bond and signed some new ones wholly independent of this transaction, and it claims that the renewal bonds were hereafter executed and its liability arose on the renewals, it becomes manifest that there are two ambiguous phrases used in the contract. This deed of trust was for the purpose of securing against all liability that may arise. The liability of the company having already arisen under the prior bond, can it be said that

its renewed liability upon the new bond was within the language may arise, and when the two thoughts are coupled together that the trust deed is to secure liability that may arise on bonds hereafter executed it becomes plain that the deed of trust contained an ambiguity as to whether these new bonds were included therein. Not only does an ambiguity appear, but an ambiguity "latens" as distinguished from an ambiguity "patens." Did the trust deed apply to only one class of bonds "hereafter" executed and having their origin after the deed or did it include those and any renewal bonds executed after and for old pre-existing debts at the time of the execution of the trust deed?

[5] This contract was drawn by the National Surety Company by its attorney and upon direction of the superintendent of its claims department and must be most strongly construed as against it. With the evidence offered there can be no doubt that Minnie A. Graham, the wife, had no idea that the contract was subject to the second construction indicated, and there was no reason why she should have such idea when she read and signed the instrument. Properly construed as against her, the trust deed secured only bonds or other instruments executed in the future and did not include re-execution of bonds to secure pre-existing debts upon other bonds and the liability on new bonds could not be said to arise on them, but it originally arose on a bond "heretofore" executed and renewed and re-evidenced by the new bond. While there was nothing fraudulent in the execution of the contract, as the company knew that she had refused to sign this trust deed to secure the indebtedness on the high school, the attempt of the company after the execution of the deed to make antecedent obligations into subsequent obligations would operate as a fraud and would not be tolerated. The plaintiff therefore was not entitled to a decree as against her or as against the homestead for the amount it paid upon the individual bonds given to secure the debts upon which it was liable at the date of the execution of the trust deed upon the bond of the 27th of July, 1910. See United States v. Bethlehem Steel Co., 205 U. S. 105, 27 Sup. Ct. 450, 51 L. Ed. 731; Lowrey v. Hawaii, 206 U. S. 206, 221, 27 Sup. Ct. 622, 51 L. Ed. 1026. A more difficult question arises with reference to defendant David Graham and the property other than the homestead.

[6, 7] That David Graham is liable for the amount paid by the National Surety Company upon the obligations of the Graham-Young Company is beyond dispute. The bill sets forth the execution of the several bonds by the Graham-Young Company, which was a partnership of which David Graham was a member, by David Graham as principal, and by the National Surety Company as surety, and the default of the principals and the payment on the notes the bonds were to secure by the surety company, and prayed the foreclosure of the trust deed and to have judgment for any deficiency after applying the proceeds of the trust deed, against both defendants, and for general equitable relief. Included in the prayer was necessarily a prayer for subrogation to which the surety company was clearly entitled. Cooper v. Jewett, 233 Fed. 618, 147 C. C. A. 426. We have no doubt of the court's power to render a decree against David Graham for the amount paid by the surety company on the obligations of the firm

of which he was a member upon which it was surety. A more diffi-
cult question arises as to the validity of the trust deed as between
the surety company and David Graham as to this indebtedness. He
never objected at any time to giving on his own behalf a trust deed
to secure past indebtedness, and he could alone mortgage any property
other than the homestead although it is probable that if he died be-
fore judicial sale under foreclosure his widow would have been en-
titled to a distributive share in the property under General Statutes
of Minnesota, 7238. His wife, for aught that appears, had no knowl-
edge that it was planned to give new bonds for the old ones but David
Graham, with presumptive knowledge of the terms of the deed of
trust, executed in the name of his firm the new bonds upon which this
suit is brought. These new bonds were within the very terms of
the trust deed as "hereafter" executed. By so doing he acqui-
esced in the construction of the surety company as to the mean-
ing of the trust deed. If it is thought that there is any inconsistency
in construing this trust deed to cover only new obligations as to Min-
nie A. Graham but to include pre existing debts as to David Graham,
the explanation is to be found in the different evidence as to these
parties. The moment that it is conceded that parol evidence is ad-
missible to aid in construing a latent ambiguity, it necessarily fol-
lows that the finding of facts may not be the same as to all the parties
as the evidence may not be alike as to them all. Perhaps a fair illustra-
tion may be found in a criminal case against two parties for a joint
offense. Take for example adultery. If one of them is guilty, in
the absence of force both must be guilty, but it does not follow that
both must be convicted or both acquitted. The evidence may be suf-
ficient to justify a conviction against one and not against the other.
In addition to other pointed evidence but not enough to require con-
viction, one of the parties may have made no declaration on the sub-
ject at all, while the other may have expressly admitted the illicit
commerce. Clearly a jury should convict the latter and acquit the
former. State v. Caldwell, 8 Baxt. (Tenn.) 576; Alonzo v. State,
15 Tex. App. 378, 49 Am. Rep. 207. So, having found that the trust
deed contains a latent ambiguity, we find the evidence requires a find-
ing as against Minnie A. Graham and the homestead that the con-
tract was only with reference to new bonds "hereafter" executed,
but as to David Graham we find that he was willing in the first place
to give security for pre-existing debts and subsequently executed new
bonds for pre-existing debts with the National Surety Company as
surety and thereby acquiesced in the construction of the surety com-
pany that the ambiguity should be solved as contended by it.

Entirely aside, however, from this question, the lands covered by
the trust deed are all in either St. Louis or Itasca counties in the
state of Minnesota. They are both in the Fifth Division of the Minne-
sota District Court, and the court in which this case was tried is held
in St. Louis county, while Itasca joins it immediately on the west.
It is provided by section 7907 of the General Laws of Minnesota that:

"Every judgment requiring the payment of money rendered in a Circuit or
District Court of the United States within this state shall be, from the docket-
ing thereof in said court, a lien upon the real property of the judgment debtor

situated in the county in which it is so docketed, the same as a judgment of a state court. And a transcript of such docket may be filed with the clerk of the District Court of any other county, and shall be docketed in his office as in the case of judgments of the state courts, and with like effect."

If a decree was therefore entered in this case for the National Surety Company against David Graham for the amount due it on their bonds which it would clearly be entitled to, it would at once become a lien on the lands in St. Louis county and become a lien on the lands in Itasca county with the filing and docketing of the judgment with the clerk of the state district court.

There is no proof that there have been any intervening rights and there seems therefore to be no possible prejudice to any other person in holding that the trust deed is valid as against David Graham and the lands other than the homestead.

It is therefore ordered that the case be reversed and remanded, with directions to the District Court to set aside the decree heretofore rendered and to dismiss this case as to the homestead and as to Minnie A. Graham and grant a decree of foreclosure for the amount paid by the National Surety Company upon the bonds executed by it as surety for the Graham-Young Company, with the protest fees, interest, and costs, against David Graham and the property other than the homestead.

HOOK, Circuit Judge (dissenting in part). I am unable to concur in the reversal of the decree below as to the homestead. I think the trial court was right in all respects; that all parties knew the terms of the adjustment with the creditors and what the surety company was to do and what was intended by the mortgage; also, that the terms of the mortgage were not latently ambiguous but conformed precisely to the intention and understanding.

AMIDON, District Judge. I concur in that part of the foregoing opinion which reverses the decree of the trial court as to the homestead, but I am of the opinion that the reasoning which compels that result also compels a reversal of the entire decree.

A careful consideration of the trust deed and of the evidence convinces me that it was the intent of Mr. Bennett and of Graham and Young that the trust deed should not secure the indebtedness for the Gilbert schoolhouse. That question was paramount in the negotiation of the parties for a considerable time prior to the meeting of the creditors and prior to the preparation of the trust deed. Mr. Bennett testified frankly that he understood that Mrs. Graham refused to mortgage her homestead to secure the indebtedness for the Gilbert school. That subject was fully discussed both before and after the meeting of creditors. Nothing passed between the parties to justify the inference that it was ever the intent of either Mr. Bennett or Mr. Graham that the deed should be binding upon Mr. Graham but not upon his wife. Or that it should not be a lien upon the homestead but should be a lien upon the other tracts described in it. The agreement for the giving of the notes to the creditors and the securing of

the same by a bond to each creditor, signed by the firm and by the surety company, as surety, was fully settled at the meeting of the creditors, and agreed to by all parties. This was before the trust deed was executed. I am unable, therefore, to see how the signing of the notes and of the bond securing the same by Mr. Graham can be given any ex post facto effect to modify the terms of the trust deed.

I am therefore of the opinion that the decree of the trial court should be reversed with directions to dismiss the bill.