## ROGERS v. JONES et al.
### No. 150.

Circuit Court of Appeals, Tenth Circuit.
April 21, 1930.

J. L. Hull, of Tulsa, Okl. (John Rogers and West, Gibson, Sherman, Davidson & Hull, all of Tulsa, Okl., on the brief), for appellant.

Geo. S. Ramsey, of Tulsa, Okl. (Edgar A. deMeules, Villard Martin, and Garrett Logan, all of Tulsa, Okl., W. W. Pryor, of Wewoka, Okl., and W. N. Stokes, of Oklahoma City, Okl., on the brief), for appellees.

Before LEWIS, COTTERAL, and Mc-DERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

John L. Jones brought this suit to quiet his title to 120 acres of land, and particularly to remove as clouds upon his title an assignment of an undivided one-half interest in the oil and gas rights therein by Harry H. Rogers to Leslie Rogers, an assignment by the latter of an undivided one-fourth interest to W. G. Rogers, and an assignment by him of that interest to the Rogers Oil & Gas Company. These undivided fourth interests have been reconveyed to Leslie Rogers, and need not be further noticed.

The plaintiff deraigned his title to the land on May 8, 1917, directly by warranty deed from Ella Hinson. She had acquired the title in the preceding November by warranty deed from Harry H. Rogers. In his deed to her, however, there was an exception in the habendum clause which reads: " * * * Except party of the first part reserves one-half of all rentals and royalties due from oil leases on above described land and hereby conveys and transfers to party of the second part the other one-half of all rentals and royalties due from oil leases on above described premises."

On September 4, 1915, Harry H. Rogers had executed an oil and gas lease on the land to McMan Oil Company for a term of five years, but to continue as long as oil or gas should be produced from the land. That lease was never developed, and it was, after assignment to the Magnolia Petroleum Company, formally discharged of record, on September 18, 1920. The assignment in question by Harry H. Rogers to Leslie Rogers was dated August 23, 1926. In the following December the plaintiff executed an oil and gas lease to T. B. Slick, and he in turn has assigned that lease to Tom Slick, Inc., a corporation. On application of Leslie Rogers, that company was made a defendant and filed an answer and counterclaim in support of its lease.

The cause was tried upon the pleadings and evidence, resulting in a decree as prayed for the plaintiff and Tom Slick, Inc., all the issues being found in their favor.

The two questions involved in the case are, first, whether there was a reservation of one-half of the mineral interest in the land in the deed of Harry H. Rogers to Ella Hinson; and second, whether, as Leslie Rogers requests, the deed should be reformed so as to reserve that interest.

Counsel for the appellant stresses certain propositions. One of them is that a reservation of an income from an interest in land is a reservation of that interest itself, but it is unimportant, because of our conclusion that by the exception in the deed the income reserved was only that inuring from the lease to the McMan Oil Company.

There is no definite foundation for a construction favorable to appellant of the exception clause in the deed. It is conceded that by modern rule the intention of a grantor in a deed is properly ascertained from the entire instrument. The accepted rule in Oklahoma is to that effect, and should be followed by this court. 8 R. C. L. 101; Hubbird v. Goin (C. C. A.) 137 F. 822; 18 C. J. 256; 2 Devlin on Deeds, § 836; Smart v. Bassler, 101 Okl. 39, 223 P. 352. Counsel for appellant emphasize the fact that the word "leases" is used in the exception clause, and insists it must be taken as including future leases. But such was not the expression. The omission of the word "future" or any reference to leases of grantees is significant. A contrary meaning is drawn from the words, "due from oil leases on above described land"; that is, "due" and "on" the land. A construction that future leases were contemplated is not justified, without a clear reference to them and their terms and conditions. Surely, if that had been the meaning, it would have been so stated. There was no occasion for the use of more accurate language if the reference was to a lease theretofore executed. It is more reasonable to regard the exception as intended to apply to any outstanding lease of the land. We are convinced this is a proper construction of the deed on its face.

Besides, the rule is, a deed, if its language is doubtful, should be construed most strongly against the grantor, who controlled the execution of the instrument. Coley v. Williams, 98 Okl. 143, 224 P. 345; Rose v. Union Gas & Oil Co. (C. C. A.) 297 F. 16; Belch v. Schott, 171 Mo. App. 357, 157 S. W. 658; Lyon v. Dailey Copper, Mining & Smelting Co., 46 Mont. 108, 126 P. 931; 18 C. J. 344, 345; 8 R. C. L. 104; Towns v. Brown (Ky.) 114 S. W. 773. The rule adds force to a construction favorable to the appellee.

Parol evidence of the intention of the parties gathered from the circumstances and situation of the parties is admissible to explain a latent ambiguity in a deed. Graham v. National Surety Co. (C. C. A.) 244 F. 914; Roxana Petroleum Corporation v. Corn

(C. C. A.) 28 F.(2d) 168; 8 R. C. L. 1041. Assuming that such evidence was competent in this case, we consider the facts which the evidence tends to establish.

██ Jones bought the land for full value, and did not know of an adverse claim, except from the deed and abstract of title, and did not learn Rogers claimed a mineral interest until June, 1927, after drilling was started. Rogers testified his intention was to reserve a one-half of the mineral interest. He directed Hyde, a banker and real estate dealer, to prepare a contract for a deed to Moore of the surface and one-half the mineral rights, and it was assigned by Moore to Hinson. Hyde claims that he endeavored to insert a reservation of one-half of the mineral interest, and such was a rule of Rogers, who was doubtful whether it might be reserved, and thought the way to do it was to reserve the rents and royalties under leases. Moore states he bought the surface and one-half interest in the royalties and all mineral rights, and explained to the husband and agent of Ella Hinson, he (Moore) owned the same. He is uncertain, however, whether he used the words "royalty" or "mineral," but used the word "rentals." The contract had been drawn in the same terms as the deed. Rogers waived his interest once at the request of Ella Hinson, in favor of mortgagees, and again at the request of a mortgagee, but never at the request of Jones. No rental or royalty was due from the McMan Oil Company at the date of the deed. Rogers says Slick, then negotiating for a lease, requested him to turn over "the interest," so he would have a good title, but he told Slick he had conveyed it to Leslie Rogers and had no control over it. Rogers was doubtful whether he prepared the deed, and probably did not. It was shown he was an experienced lawyer and at the time attorney for the McMan Oil Company.

What has been said regarding construction of the deed is most strongly opposed to the above showing of the intended reservation. It seems reasonably certain that Rogers, with his practical qualifications, would have been alert to have his deed accurately express it. When he came to make the assignment to Leslie Rogers, the description therein was carefully given as an undivided one-half of "all the oil and gas rights and other minerals" in, to, or under the land. The intention sought to be shown by parol testimony is clearly out of harmony with the exception in the deed, and it is insufficient to overcome the meaning indicated by its terms.

██ If the deed is regarded as susceptible to the explanation tendered, then it is to be said the evidence points two ways, and the issue was submitted to the trial court. It is a settled rule that the findings of a chancellor should be accepted, in the absence of a serious mistake in the consideration of the evidence. United States v. Board of National Missions (C. C. A.) 37 F.(2d) 272; New York Life Ins. Co. v. Griffith (C. C. A.) 35 F.(2d) 945. We are not persuaded such mistake occurred in this case.

██ In the alternative, the defendant, appellant here, seeks a reformation of the deed to show a reservation of one-half of the mineral interest. Appellant had the burden of establishing a mutual mistake of the parties by proof "of the clearest and most satisfactory character." Philippine Sugar E. D. Co. v. Philippine Islands, 247 U. S. 385, 38 S. Ct. 513, 515, 62 L. Ed. 1177; Skelton v. Federal Surety Co. (C. C. A.) 15 F.(2d) 756; King v. Turner, 109 Okl. 77, 234 P. 564; Columbian National Ins. Co. v. Black (C. C. A.) 35 F.(2d) 571. But the proof is not sufficient as to a mistake on the part of the grantee, Ella Hinson. The conversation of Moore and her husband is uncertain, except as to the use of the word "rentals." She proceeded to convey the land to Jones, without reservation, for full value. On the further question of notice to Jones, it is shown he knew the contents of the deed. Aside from that, he was bound by the instrument as a link in his chain of title. Mo. State Life Ins. Co. v. Kees, 115 Okl. 185, 242 P. 159; Page v. Natural Gas & Fuel Co. (C. C. A.) 35 F.(2d) 462. But, as we have held, it was not notice of a reservation of the mineral interest. It is said to have put Jones on inquiry as to the intended reservation. The most that may be claimed is that a question of fact arose relative to his duty to make inquiry. All the findings of the trial court were in his favor, and, according to the rule heretofore stated, the finding in this controversy should be sustained.

As we have concluded the title of John L. Jones was free of reservation, it follows that his lease to T. B. Slick and his assignee must be upheld.

Our consideration of the case leads us to conclude the decree of the trial court is well sustained. The decree of that court should be, and it is, affirmed.