## CENTRAL COMMERCIAL OIL CO. v. INDIAN TERRITORY ILL. OIL CO.

No. 24653.   Feb. 5, 1935.

Rehearing Denied March 5, 1935.

E. E. Buckholts, Wm. Jones, Goode, Dier-ker & Goode, and Tom C. Waldrep, for plaintiff in error.

W. P. McGinnis, Fred M. Carter, Archibald Bonds, and Donald Prentice, for defendant in error.

BAYLESS, J. Central Commercial Oil Company, a corporation, as the plaintiff, filed an action in the district court of Pottawatomie county, Okla., against the Indian Territory Illuminating Oil Company, a corporation, as defendant; and, thereafter, when judgment had been rendered in the trial court in favor of said defendant, the plaintiff prosecuted an appeal to this court.

The facts may be briefly stated as follows: The plaintiff was the owner of an undivided one-half interest in certain oil and gas leases in Pottawatomie county and entered into a written contract to sell said interest in said leases to the defendant. Thereafter the plaintiff furnished to the defendant evidence of its title and other information required by the contract and thereafter attempted to meet the requirements made by the defendant's lawyers with reference to its title. Controversy arose between the parties regarding the title, the correctness of the legal position taken by defendant's attorneys, and as a result the defendant returned all of the papers relating to the matter to the plaintiff and refused to accept the assignments of title or to pay therefor. The plaintiff filed then this action.

The court, after hearing the evidence and considering the arguments of the parties, found as follows:

"That the plaintiff entered into a contract to sell and convey to the defendant certain oil, gas, and mineral leases, and did agree to furnish satisfactory titles thereto; that the plaintiff tendered said conveyances and abstracts of title covering said conveyances, within the time fixed, and the defendant's attorneys examined said titles and made some requirements with respect to the titles to some of said conveyances.

"That said requirements were not thereafter waived by the defendant, and as made were never met by the plaintiff, and that the attorneys for defendant in making said requirements were acting in good faith and without fraud."

The plaintiff makes its argument under several assignments of error, but due to the view we take of the matter we will not set out these assignments of error. Some of them will be disposed of by the opinion and others will not be noticed because we deem them immaterial.

The first matter to be considered is the character of the plaintiff's action and the relief sought. Plaintiff pleaded in ample detail the incidents which transpired, and alleged, further, that the act of the defendant and its attorneys in refusing to approve the plaintiff's title to the leases was collusive, and was in bad faith and fraudulent. It then alleged that it was damaged in the sum of $20,000, the amount of the agreed purchase price, and prayed judgment accordingly.

The plaintiff introduced detailed evidence as to the transactions leading up to, including, and subsequent to the refusal to approve the title. The plaintiff did not prove that the action of the defendant's attorneys in refusing to approve the title was in bad faith. It is true that there was a controversy concerning the correctness, from a legal standpoint, of the position taken by the defendant's attorneys, but we can find nothing in the record to indicate that this position was taken either arbitrarily or at the direction of the management of the defendant company for the purpose of evading the company's obligations under the contract.

It is well settled that parties may contract for the sale of property subject to the approval of an attorney, agent, or other third person, even if such approving party is related to the vendee (6 R. C. L. 956, sec. 335; 66 C. J. 524, sec. 61, note 22; and Farm Land Mtg. Co. v. Wilde, 41 Okla. 45, 136 P. 1078) ; and where such a third person has disapproved vendor's title, the burden is upon the vendor to show that this act was not done in good faith (First Nat. Bank v. Clay, 74 Okla. 112, 177 P. 115; and St. L.-S. F. R. Co. v. Nix, 101 Okla. 197, 224 P. 982).

The plaintiff insists that the findings of the trial court, quoted above, are not supported by the evidence. We are not going to discuss the evidence in this opinion further, for conceding for the sake of argument (which we do not) that the plaintiff's contention is true, there are other reasons urged by the defendant with which we agree why the plaintiff is not entitled to judgment.

The petition can be construed as one seeking to state a cause of action in damages for the breach of a contract to purchase an estate in real property, the measure of damage for which is set forth in our statute, section 5983, C. O. S. 1921 (9970, O. S. 1931). It is true that the measure of damage alleged in the petition is not in keeping with the statute, but this is immaterial, as it is the duty of the court to apply the correct measure of damages to the pleadings and evidence of the parties. But the evidence introduced by the plaintiff fails to establish any indication of the value of the leases or any other comparative evidence to which the measure of damage stated in our statute, supra, could be applied.

But the plaintiff argues that, even if this is so, if there is any relief which can be granted to it under its pleadings and its evidence, it is the duty of the trial court and this court to construe the evidence and pleadings and to grant relief accordingly. It then argues that its petition and evidence are sufficient to support an equitable relief in the nature of specific performance. In connection with this assignment it is one of the very first and certainly the most elemental and essential conditions precedent to the granting of relief of specific performance that the decree sought should be complete—that is to say, that the parties will be able to abide and obey the decree of the court. The party seeking such relief must have tendered performance or must tender it in his pleadings or be ready to tender and perform at the instance of the court. 25 R. C. L. 322, sec. 137; 58 C. J. 1073, sec. 327;

4 Pomeroy's Equity Jurisprudence (3d Ed.) p. 2774, sec. 1407; and Fry on Specific Performance of Contracts (3d Ed.) with American notes, p. 453, sec. 903.

The evidence of the plaintiff's witness Jones makes it clear that between the time the defendant refused to approve the plaintiff's title to the leases and time of the trial of the action, all of the leases in question had lapsed and had ceased to exist because of nonpayment of rentals. It is clear that at the time of the trial of the action there were no leases in existence which the plaintiff could assign to the defendant either voluntarily or in keeping with the decree.

In Fry on Specific Performance of Contracts, p. 446, sec. 891, it is said:

"Where from the nature of the contract, it appears that the contracting parties contemplated its fulfillment only in the event of the continued existence of some subject-matter or thing, the contract is held to be subject to an implied condition that it shall cease with the subject-matter or thing; and if, before performance, the thing cease to exist, the contract goes with it."

Therefore, at the time the court could have acted in plaintiff's favor, if the plaintiff had shown itself entitled to the relief sought, there was no property or subject-matter or thing in existence which could be the subject or object of specific performance.

However, the plaintiff argues that it comes within the rule stated in Fry's work, supra, p. 446, sec. 892, as follows:

"In the case of contracts for the sale of land, it has been laid down with regard to events happening after their being signed, that the question on whom the advantage or loss resulting from them would fall, and whether, therefore, the court would enforce specific performance without reference to them—or whether, on the other hand, they might determine the contract—is to be decided by whether or not the title had then been actually accepted. But the more correct doctrine appears to be that the equitable estate passes on the signature of the contract if there be a good title, though that may not be shown till afterwards."

We do not agree with this argument. We will quote certain parts of the contract from which it is certain that the sale was entirely conditional, that is to say, it was not consummated when the contract was signed, and the title did not pass from the plaintiff to the defendant; but the sale was to be consummated upon the performance of certain acts by the parties and the bona fide approval by the defendant's attorneys of

the title of the plaintiff, and until these things had been done the leases remained the property of plaintiff. The portions of the contract to which we refer are as follows:

"* * * Whereas, first party owns an undivided one-half interest in and to valid oil and gas mining leases. * * * Whereas, first party desires to sell and assign to second party its entire undivided one-half of all the right, title, and interest of the original lessee and present owner in and to said leases * * * on the terms and conditions hereinafter set out, and second party is willing to purchase said interest in said leases * * * on said terms and conditions, provided it can secure valid title to an undivided one-half interest in and to valid leasehold estate for oil and gas mining purposes in and to all of the lands described in said Schedule 'A':

"* * * Subject to the full carrying out and performance by first party of all of its obligations hereunder, as hereinabove set out, and subject to approval of titles by the attorneys of second party and the acceptance by them of the assignments above referred to. * * *"

We think the rule announced in Fry, supra, p. 447, sec. 893, as follows:

"Where the contract is in its inception expressly conditional, the transfer of equitable estate from the vendor to the purchaser takes place, not on the conclusion of the contract, but on its becoming absolute by the performance of the condition, and until that event the property sold remains at the risk of the vendor"

—which is a complement of the rule announced in section 891, supra, is the true rule applicable to this situation.

Judgment affirmed.

McNEILL, C. J., OSBORN, V. C. J., and WELCH and CORN, JJ., concur.