FEDERAL LAND BANK OF WICHITA,
KAN., et al. v. NICHOLSON et al.

No. 35134.    Dec. 9, 1952.

*251 P. 2d 490.*

L. A. Winans, Duncan, and Robert C. Dow and Edw. H. Jamison, Wichita, Kan., for plaintiffs in error.

Brown, Cund & Brown, Duncan, for defendants in error.

HALLEY, V.C.J.    The Federal Land Bank of Wichita, Kansas, and J. A. Ketchum filed this action in the district court of Stephens county, Oklahoma, against William W. Nicholson, James O. Nicholson, Olive E. Worley, their respective spouses, and the unknown heirs of Wiley P. Nicholson, deceased, to quiet title to 100 acres of land. The three defendants first named were the sole heirs of Wiley P. Nicholson, deceased, from whom they had inherited the land in question.

On November 2, 1916, the three Nicholson heirs first named executed a warranty deed conveying the land to Charles B. Burkleo, with the following reservation:

"It is understood that the grantors herein retain a one-half interest in all royalties received from any oil and gas leases the party of the second part may give on the above described land, but the grantee is to receive all rentals from said lease."

Charles B. Burkleo never executed any oil and gas lease on the land, and on February 25, 1933, he was joined by his wife in the execution of a warranty deed conveying the land to the Federal Land Bank of Wichita, Kansas, making no mention of minerals or mineral rights.

On September 18, 1935, The Federal Land Bank executed a special warranty deed conveying the land to J. A. Ketchum with the following reservation:

"Reserving to the grantor an undivided one-half interest in and to all oil, gas, casing head gas and other mineral royalties reserved under any oil and gas lease now in existence, or which may hereafter come into existence, upon and covering the above and foregoing described real estate, or any part or portion thereof; it being understood, however, that all rents due or to become due under the terms of any such lease, shall be paid to the grantor herein, or his assigns and grantees."

This action to quiet title was commenced on October 3, 1947, by The Federal Land Bank of Wichita, Kansas, and J. A. Ketchum, alleging that they were the owners of the fee-simple title and that the defendants were claiming some interest in the minerals or royalties therein by virtue of the reserva-

tion in the deed to Charles B. Burkleo in 1916.

The defendants answered and alleged that they owned a one-half interest in the minerals by reason of the above-quoted reservation, and prayed that their deed to Burkleo be construed and re-formed to express the intention of the parties, and that their title to one-half of the minerals be quieted.

Plaintiffs replied that defendants had no interest in the land, and pleaded laches and limitations. The case was submitted to the court and judgment rendered for the defendants, giving them a one-half interest in all oil, gas and other minerals in and under the land and one-half of any bonus paid for an oil and gas lease thereon, subject to the rights of the successors in interest of Charles B. Burkleo to execute oil and gas leases on the land without joinder of the defendants, and that such oil and gas leases should provide for a royalty of not less than one-eighth of the production, and that Charles B. Burkleo or his successors in interest should receive all delay rentals and one-half of any bonus paid for the lease.

The plaintiffs have appealed. The parties will be referred to as they appeared in the trial court.

The plaintiffs complain that the court erred in extending the terms of the royalty reservation under a specific lease to cover additional leases not included in the terms of the reservation. The defendants first claimed that it was their intention to reserve for themselves one-half of all minerals in and under and that might be produced from the land. During the trial, that claim was specifically abandoned by defendants. Their attorney made the following statement in open court, as shown at page 84 of the case-made:

"I will state again that the defendants in this case have abandoned that portion of their answer which seeks to set up an undivided one-half interest in the minerals. We are asking the court to construe this deed."

The language of the reservation in favor of defendants is that grantors (defendant here) " * * * * retain a one-half interest in all royalties received from any oil and gas lease the party of the second part (Burkleo) may give on the above described land, but grantee is to receive all rentals from said lease."

Plaintiffs claim that this language is clear and makes it plain that any interest reserved by defendants was applicable only to a lease or leases executed on the land by Charles B. Burkleo, and that since he executed no lease and has conveyed all interest held by him, the interest reserved by defendants has expired. The defendants claim that any interest held by Burkleo inured to his successors and assigns by the following clause in the deed of defendants to him:

"To have and to hold said premises unto the said party of the second part, his heirs, successors and assigns, forever."

When Burkleo conveyed all his interest in 1933, his deed was one of general warranty, in which he covenanted that the land was "Free and clear and unencumbered of and from all former and other grants, titles, charges, estates, judgments, tax assessments, and encumbrances of whatsoever nature." The plaintiffs rely upon Rogers v. Jones, 40 F. 2d 333, wherein the court had under consideration the following exception or reservation in a deed:

" * * * except party of the first part reserves one-half of all rentals and royalties due from all oil leases on the above described land and hereby conveys and transfers to party of the second part the other one-half of all rentals and royalties due from oil leases on the above described premises."

It was contended in that case that since the word "leases" was used in the exception clause, it should be held to include future leases. The court held against this contention and, in the body of the opinion, said:

"A construction that future leases were contemplated is not justified without a clear reference to them and their terms and conditions. Surely, if that had been the meaning, it would have been so stated * * *."

The exception or reservation in the Rogers v. Jones lease expressly covered rentals and royalties due from leases then existing on the land, and is not controlling or applicable to the facts before us, where no lease had been or ever was executed on the land by Charles B. Burkleo. The reservation in the deed to Burkleo by the defendants herein did state that the grantors reserved one-half of all royalties accruing under a lease or leases executed by the grantee, Burkleo.

The rules governing the construction and interpretation of deeds are well settled. In Jennings v. Amerada Petroleum Corp. et al., 179 Okla. 561, 66 P. 2d 1069, it was said:

"A deed should be interpreted and the meaning of the parties thereto ascertained in the same manner as governs other written contracts."

Our statutes, 15 O.S. 1951 §§152 and 154, respectively, provide:

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

"The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."

In 12 Am. Jur. §792, it is said:

"Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. The interpretation of any instrument ought to be broad enough to allow it to operate fairly and justly under all the conditions to which it may apply. A court will not place an unjust interpretation upon a contract unless the terms thereof compel it to do so. An agreement will not be interpreted so as to render it oppressive or inequitable as to either party or so as to place one of the parties at the mercy of the other, unless it is clear that such was their intention at the time the agreement was made. An interpretation which is just to both parties will be preferred to one which is unjust."

In Kondos v. Stauffer, 180 Okla. 185, 69 P. 2d 338, it was said:

"In the first place, the court should place itself, so far as possible, in the position of the parties, and consider the instrument as drawn, the circumstances surrounding the transaction, the purpose in view, and determine the meaning of the words used so as to carry into effect the intention of the parties."

In Hampton v. Kessler, 193 Okla. 619, 145 P. 2d 955, this court said:

"In construing a deed of doubtful meaning, the first duty of a court is to ascertain the intention of the parties, particularly that of the grantor, and in doing so, the courts should place themselves as nearly as possible in the position of the parties when the deed was executed. 16 Am. Jur. 531, sec. 168. The rule urged by the defendant that the deed will be construed most strongly against the grantor, and the rule urged by the plaintiff that a deed will be construed most strongly against the one drawing the deed are subordinate to the rule of intention first above mentioned."

The terms "bonus", "rentals", and "royalty" are generally well understood at this time, but were not so well understood in 1916 by those not engaged in the oil and gas business. In Carroll v. Bowin, 180 Okla. 215, 68 P. 2d 773, these terms were defined by this court in the second syllabus as follows:

"The words 'bonus', 'rental', and 'royalty', used in connection with oil and gas leases, conveyances, and reservations, have a distinct and definite meaning in their popular sense: (1)

bonus is the cash consideration or down payment, paid or agreed to be paid for the execution of the oil and gas lease; (2) rental is consideration for the privilege of delaying drilling operations; and (3) royalty is a share of the product or proceeds therefrom."

The bonus and rentals may accrue before production is had upon the land, but "royalty" means a share of the minerals or proceeds therefrom after production is had. In this state, the term "royalty" has never been construed to mean an interest in oil, gas, or other minerals "in place", but accrues only after production has been obtained.

We think it clear that the court exceeded its power in awarding the defendants a one-half interest in all of the minerals in and under or that might be produced from the land in question, after the defendants had abandoned that claim. Bishop v. Franks, 188 Okla. 196, 107 P. 2d 358.

We are not unmindful of the well-established rule that the court should not undertake to make a new contract for the parties where the language used by them is clear and unambiguous and no mutual mistake or overreaching appears. However, we think that the reservation in the deed of defendants to Charles B. Burkleo is such as to warrant the conclusion that reasonable men might differ as to the intention of the parties. The fact that this action was filed and an appeal lodged in this court is persuasive of such a conclusion.

When we place ourselves in the positions of the parties when defendants executed their deed to Burkleo, it is unreasonable and absurd to assume that defendants would have reserved to themselves the right to receive one-half of the royalties accruing only in the event that their grantee, Burkleo, chose to execute an oil and gas lease while he held the land. He held it from 1916 to 1933 and executed no lease. When he sold the land by general warranty deed he gave up the interest he had acquired in the land. There is no

evidence that he had ever had an opportunity to lease, or that the defendants ever requested that he execute a lease. William W. Nicholson, one of the defendants, testified that he asked $4,000 for the land and that Mr. Burkleo offered him $3,500. He stated that he then advised Mr. Burkleo that he would sell him the land for $3,500 if he would permit him, his brother and his sister to retain one-half of the royalties therefrom. It is clear that the right reserved by the grantors of Mr. Burkleo was considered by them to be a valuable right. It is clear that they held a valuable right so long as Mr. Burkleo held title to the land. He could have sold the land immediately and, under the contention of plaintiffs, have destroyed completely the right reserved by defendants.

We conclude that the reservation to the defendants in their deed to Burkleo was a continuing right to receive one-half of the royalties accruing under any oil and gas lease executed by Burkleo or his successors or assigns, but that defendants had no right to participate in any bonus paid for a lease or any delay rentals accruing thereunder.

In 13 C.J. 540, it is said:

"The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the most reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided."

In 6 R.C.L. 841, it is said:

"Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that

it is susceptible of two constructions, one of which makes it fair, * * * the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. If one construction would make it unreasonable, while another would do justice to both parties, the latter will be adopted."

The judgment is modified, with directions to enter judgment awarding to defendants a one-half interest in all royalties accruing under any future oil and gas lease on the land, and decreeing that the plaintiffs are the owners of all oil, gas and other minerals in and under and that may be produced therefrom, with the right to lease and receive any bonus paid for a lease and any delay rentals paid thereunder, but subject to the one-half royalty interest of defendants; and as so modified is affirmed.

WELCH, CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. O'NEAL, J., dissents.

O'NEAL, J. (dissenting). I dissent for I would read the contract as it is written. The question for our determination is whether, under the deed from Nicholson to Burkleo, the grantor reserved a royalty interest in oil and, gas under 100 acres of land so long as Burkleo owned the land, or whether the reservation reserved such interest in perpetuity. The deed reads:

"It is understood that the grantors herein retain a one-half interest in all royalties received from any oil and gas leases the party of the second part may give on the above described land, but the grantee is to receive all rentals from said lease."

Nicholson pleaded by answer that it was the intention of the grantors and grantees that the grantors reserve one-half interest in all minerals (which claim upon the trial was abandoned and a claim was made for a reservation of a royalty interest only). He further pleaded that if the deed does not properly express the understanding

of said parties, it should be re-formed to express their true intention. Nicholson did not plead that the right to participate in the oil and gas royalties extended beyond Burkleo's ownership of the land. The trial court, however, permitted Nicholson to testify over plaintiff's objection and exception that he intended to reserve forever one-half interest of the royalties attributable to any oil and gas lease whether executed by Burkleo or his successors in interest.

It is inconceivable to conclude that the language of the reservation is either nebulous or shrouded in mystery. The grantor spelled out in clear and explicit language that he reserved the royalty interest from any oil and gas lease Burkleo might execute upon the land during his ownership thereof. If Nicholson had intended to reserve a royalty interest after Burkleo conveyed the land to others, that intent could have been expressed in very simple language. Burkleo continued to own the land from the date of its conveyance to him in 1916 to the year 1933, during which term of ownership Burkleo had not leased the land for oil and gas purposes. In the latter year Burkleo conveyed the land by fee-simple title without any reservations to the plaintiff in the instant case.

The majority opinion states:

"When we place ourselves in the positions of the parties when defendants executed their deed to Burkleo, it is unreasonable and absurd to assume that defendants would have reserved to themselves the right to receive one-half of the royalties accruing only in the event that their grantee, Burkleo, chose to execute an oil and gas lease while he held the land."

The opinion assumes that Nicholson was ignorant of the scope and effect of the transaction involved, and not competent to contract. Neither by allegation or proof is it shown that there was a mutual mistake of the parties, or that the conveyance was procured by

fraud, or overreaching, or by any act of misfeasance or nonfeasance of Burkleo.

On the contrary, Nicholson testified that he and Burkleo had discussed the sale and purchase of the land on three occasions before agreeing upon its terms, and that after an agreement was reached he requested Burkleo to go with him to the office of his attorney where they explained the transaction to the attorney and requested him to draw the deed in question. The deed was prepared, signed and recorded.

The majority opinion assumes that the contract was improvidently made, and that Nicholson should not have made it. We are empowered to construe contracts, but I find no authority either in law or under principles of equity warranting our making contracts for litigants which might appear to us now to be more reasonable than the one actually made by them.

Nothing in the record leads me to conclude that Nicholson and his attorney were incompetent to enter into the character of a contract here involved. All of the evidence which sought to vary or change the terms of the contract was improperly admitted, and should not here be considered for the reason that the agreement was free from latent ambiguity. The evidence, if admissible, is not sufficient to sustain the court's judgment. We have frequently held that in order to justify a reformation of a deed the evidence must be full, clear, unequivocal and convincing as to the mistake and its mutuality. That the proof must establish the fact to a moral certainty and take the case out of the range of reasonable controversy.

A muniment of title as here established and not challenged for more than thirty years, which is evidenced by words so simple as to be free from any doubt or ambiguity, should not be lightly held for naught upon the assumption indulged in here that the grantor might have made a more advantageous contract.

Parties sui juris not only have the right to contract, but also the right to enter into the kind and character of a contract which they choose to make, so long as the contract does not run counter to the public policy of the state or its laws.

I cannot give my consent to the conclusions reached in the majority opinion. I find no latent ambiguity in the language employed, and I think we should therefore read the contract as it is written.