Lawrence J. DIEHL and Lorene Diehl, husband and wife, Plaintiffs in Error,

v.

Frances J. WELSH, John B. Mansell and Lila Mansell, husband and wife, Defendants in Error.

No. 40365.

Supreme Court of Oklahoma.

June 30, 1964.

Blackstock & Unruh, Tulsa, for plaintiffs in error.

Earl M. Knight, Spavinaw, for defendants in error.

DAVISON, Justice.

The parties occupy the same relative positions in this court as they did in the lower court and will be referred to by name or as plaintiffs and defendants.

Plaintiffs, Lawrence J. Diehl and Lorene Diehl, husband and wife, filed suit in the lower court against Frances J. Welsh, John B. Mansell and Lila Mansell, husband and wife, as defendants to recover $1000 that was paid to Frances J. Welsh as a down payment on the purchase of real estate, and for foreclosure of a vendee's lien and for attorney's fees. The Mansells were subsequent purchasers of the real estate from Frances J. Welsh. The trial was to the court and judgment was for the defendants.

The controversy arose out of a Memorandum Agreement between Lawrence J. Diehl and Frances J. Welsh, dated December 9, 1959, whereby Mrs. Welsh agreed to sell to Mr. Diehl Lot 24, Block "A", of Cliff Crest Subdivision in Mayes County, Oklahoma, together with household goods located in the residence upon the premises, for a consideration of $16,000. The contract then provided:

"$1000.00 has this date been paid on said purchase price, and the balance upon approval of title by purchaser's attorney; with possession of premises to be delivered on or before the 15th day of February 1959 (sic). Property to be free and clear of all encumbrances with taxes for year of 1959 paid by seller.

"It is further understood and agreed that the residence located on the premises is within the lot boundary lines as shown by the survey submitted to purchaser, and made by F. C. Settle, Engineer, of July 5th, 1956."

It appears the property adjoins Grand Lake.

The abstract delivered to the attorney for the purchaser was only certified to December 3, 1957. The attorney's title opinion to Mr. Diehl, dated January 22, 1960, disapproved the title and made a number of requirements as to showing certain guardianship proceedings and judicial termination of several joint tenancies, including the joint tenancy between Mrs. Welsh and her deceased husband, and required that the abstract be brought to date and show compliance with the requirements and resubmitted for title examination. The opinion also required that Mr. Diehl satisfy himself concerning the parties in possession and what interest they claimed.

The title opinion was delivered to the attorney for Mrs. Welsh together with a proposed form of deed for use in conveying the property. This deed was executed by her and delivered to the attorney for the Diehls, but was later returned when the location of the boundary line between the subject property and the adjoining Lot 25, owned by a Mrs. Buck, was questioned by the Diehls. In the meantime the attorney for Mrs. Welsh took steps to meet the requirements and procured several deeds to cure the requirements made with regard to the above mentioned guardianship proceedings.

The Diehls had an independent survey made of the property and by reason thereof the attorney for the Diehls prepared an agreement for the signature of Mrs. Buck (owner of adjoining Lot 25) relating to establishment of the boundary line. This agreement was transmitted to Mrs. Welsh's attorney on March 10, 1960, with a suggestion that, upon Mrs. Buck executing the agreement, the sale be closed, with $1000 to be withheld until the remaining title requirements were satisfied. The independent survey and agreement were not introduced and do not appear in the record. Mrs. Buck refused to execute the agreement.

On April 4, 1960, Mrs. Welsh brought suit to quiet title against Mrs. Buck and advised the attorney for the Diehls of such action and on April 12, 1960, Mrs. Diehl, by letter to the attorney for Mrs. Welsh, conclusively disavowed the purchase contract and requested return of the $1000 down payment. On May 31, 1960, the Diehls filed a notice of vendees' lien in the office of the county clerk of Mayes County. There was no further efforts by either party to close the sale of the property.

Thereafter, in October, 1960, a judgment was rendered in the quiet title suit whereby the title to the subject property (Lot 24) was quieted in Mrs. Welsh and the title to Lot 25 was quieted in Mrs. Buck. In March, 1961, the subject property was sold and conveyed by Mrs. Welsh to the defendants Mansells for a consideration of $15,000. In connection with this sale an attorney for these purchasers accepted the title as merchantable, with the exception of plaintiffs' vendees lien, after showing of judicial termination of prior joint tenancies, and no complaint was made as to the boundaries.

The trial court found in its judgment that the contract was for the sale of Lot 24, as shown by the F. C. Settle survey; that the parties knew that completion of the administration of the estate of the deceased husband of Mrs. Welsh was necessary; that plaintiffs renounced the contracts during such administration and before expiration of a reasonable time to perfect the title; and that Mrs. Welsh perfected such title and conveyed the property to the defendants Mansells for $1000 less than the amount agreed to be paid by plaintiffs.

From our examination of the record it is clear to this court, and was evident to the trial court, that plaintiffs' cancellation of the purchase contract was based on the contention that there was a dispute over or as to the location of the boundary line between Mrs. Welsh's property (Lot 24) and the adjoining property of Mrs. Buck (Lot 25). The other questions raised as to the sufficiency of the title had either been cured or were in the process of being answered during the period of several months that the attorneys were trying to reach an agreement on the boundary line matter. The notice of Diehl's withdrawal from the contract refers only to this matter. The other requirements as to the prior guardianship proceedings and termination of joint tenancies were subsequently supplied. This conclusion is in accord with the findings of the trial court or is inherent in the judgment.

■ It is our opinion that the terms of the contract of sale clearly set out the agreement of the parties concerning the boundaries of the property agreed to be sold and conveyed. The last paragraph of the above quoted portion of the contract designates the Settle survey as descriptive of the property. This survey is a drawing of the boundary lines of the property as fixed by a metes and bounds description, with direction of the lines in terms of degrees and minutes, and is described as constituting Lot 24. Furthermore the survey reflects the relative location of Lot 25, owned by Mrs. Buck, to be immediately to the south, with measurements and directions of the boundary lines in similar terms. There is no evidence that the residence on Lot 24 is not within the boundaries of Lot 24, and there is evidence that such improvement is within the boundary lines as shown by the Settle survey.

■ The judgment in the quiet title action established that Mrs. Welsh was the owner of Lot 24 and that Mrs. Buck owned Lot 25. We can only conclude that under the terms of the contract Mrs. Welsh was in the position of being able to perform under the contract and that the independent survey, caused to be made by Diehl, was at variance with and contrary to the terms of the contract.

■ This interpretation of the contract is fair and reasonable. In Federal Land Bank of Wichita, Kansas v. Nicholson, 207 Okl. 512, 251 P.2d 490, we quoted with approval as follows:

"'The words of a contract shall be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. * * *'"

Plaintiffs cite Central Commercial Oil Co. v. Indiana Territory Illuminating Oil Co., 171 Okl. 30, 41 P.2d 683, and cases therein cited and contend that since the contract provided for approval of the title

by their attorney, the defendants must show the attorney's disapproval of the title was in bad faith. The cited cases are not in point. The present situation involves the interpretation of the contract of purchase and we have approved the trial court's interpretation thereof in favor of the defendants. Therefore the question of good or bad faith on the part of the attorney for plaintiffs is not involved in this case and such question is unnecessary for determination.

■ Plaintiffs further contend that the proof of the defendant Mrs. Welsh failed to prove her damages and consequent right to retain the $1000 down payment. Plaintiffs argue that under 23 O.S.1961 § 28, she was required to show the amount that would have been due her under the contract over the value of the property to her.

This is not an action by the seller to enforce payment of a sum stipulated by the sale contract to be a down payment. It is an action by the buyer to recover a down payment after an alleged breach of the contract of purchase. The distinction between the two situations is made in Mid-Continent Life Ins. Co. v. Goforth, 193 Okl. 314, 143 P.2d 154, 159.

■ In Toomey v. Sporn, 145 Okl. 38, 291 P. 22, we said that it was a well established principle that a vendee who has advanced money, and has done an act, in part performance of an executory contract of sale of realty, and then stops short and refuses to proceed to its ultimate conclusion, the vendor being willing and ready to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back the money thus advanced.

In view of our conclusions herein and the cited authorities the judgment of the lower court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.