### HARMAN et al. v. FRANKS.

No. 25558.    Oct. 20, 1936.

Rehearing Denied Dec. 22, 1936.

Mark B. Ingle, for plaintiffs in error.

Dyer & Smith and M. F. Priebe, for defendant in error.

PER CURIAM. Joseph Franks sued D. B. Harman and Cora E. Harman on account of a joint adventure under the style of a "Sheep Raising Agreement," which was in effect a lease covering 320 acres of land owned by Joseph Franks. The contract provided for the raising of lambs on a fifty-fifty basis and the raising of grains on a fifty-fifty basis. The contract is only important for the purposes of this opinion in the particular that it recognized Joseph Franks as the owner of the land; and also in the particular that it bears upon the rights of the parties as evidence of their intention with respect to other matters involved, which will be hereinafter set out. The court's decision with respect to an accounting between the joint adventurers under this contract seems to be satisfactory to the parties concerned in this appeal. However, the Harmans, plaintiffs in error, injected into the case a controversy respecting the land involved which, as shown by the answer and cross-petition of the Harmans, is substantially as follows:

"That the sheep-raising agreement attached to plaintiff's petition herein * * * and the matters and things therein involved are all a part and parcel of and resulting and growing out of the contract for deed between these parties hereinafter referred to. * * *"

It is said that Cora. E. Harman was a party to the original contract for deed, and that by reason of the contract for deed D. B. Harman and Cora E. Harman have an equitable interest in and are entitled to an equitable lien on the real estate involved. The contract for deed was executed April 14, 1928, and a warranty deed was simultaneously executed by Joseph Franks. Both of these documents were deposited in escrow in the First National Bank of Hennessey, Okla., and under the contract for deed the Harmans took possession of the property on or about August 1, 1928, paying in cash $6,800 on the principal and $6,996.82 as interest. The contract fixed the price at $39,-000 and provided for the payment of $200 per month with interest at 6 per cent. per annum, with the delivery of the deed upon the payment of half of the purchase price. The Harmans were to pay the taxes beginning with the taxes for 1928, and were to receive the oil and gas rentals maturing after 1928; should keep the improvements in good repair and insured.

The contract provided that:

"In case of the failure by second parties to perform any of the conditions and agreements hereinafter set forth, then, and in that event, all rights of second party under this contract shall terminate, and the escrowed deed shall be returned to first party; and second party shall immediately surrender possession of such lands to first party; and immediately upon such default the relationship between the parties shall be that of landlord and tenant, first party being the landlord, and second party tenant, holding over after expiration of tenancy rights. * * *"

It further provided:

"In case of such default all payments made shall be retained by first party as rentals for the use and occupancy of such lands, and as further liquidated damages for breach of contract."

It is pleaded that Franks fraudulently secured the surrender of the escrowed documents to him by the representation that he desired them only for the purpose of placing a mortgage for $4,000 on the premises (which was done), and that he would after the mortgage was executed and the money received execute a new contract for deed at some subsequent date, reducing the price and rate of interest. Discussions relating to this alleged new contract are pleaded at great length in the cross-petition. It is accordingly charged that "said contract * * * was canceled and rescinded by fraud of plaintiff as aforesaid, and this defendant should recover all money expended and paid by him thereunder," and in furtherance thereof defendant contends that the total of

payments of principal and interest, improvements placed on the land, and taxes, amount to $15,640.57, and prays for the recovery of that sum with 6 per cent. interest less $466 in oil rentals received and the rental value of the land during the period of its occupancy. The prayer of the cross-petition is that the contract for deed "be adjudged rescinded through and by virtue of the fraud, deceit, duress, menace, and undue influence of said plaintiff, and that this defendant recover of and from said plaintiff" the sum of $15,640.67, with interest, and that the land be impressed with an equitable lien which the court should foreclose to satisfy the defendants' claim.

After Cora E. Harman was made defendant she adopted the answer of D. B. Harman and the cross-petition of D. B. Harman, and claims a half interest in any judgment obtained. Amendments were filed to the answers and cross-claims, among which is the charge that Joseph Franks "by his actions and conduct, has abandoned and repudiated said contract, and all contracts, for deed and performance thereof, and intends to no longer be bound thereby, and has made performance of said contract, or contracts, for deed impossible on his part, and impossible on the part of these defendants, and, therefore, in the alternative, these defendants are entitled to rescind said contract, and all contracts, for deed, and each of said defendants do hereby declare a rescission thereof, as a matter of right, in furtherance of the tender and offer to perform any act of equity which may be commanded by this court upon full hearing and trial."

It is also charged in the alternative, and the defendants "pray judgment of the court to the end and effect that said defendants have, as a matter of right, rescinded said contract and all contracts for deed on the real estate herein described."

Franks by his reply admitted the execution of the contract for deed pleaded; that he had performed all conditions to be performed by him, and that Harman and wife defaulted in all payments of principal after July 1, 1930; defaulted in the sum of $1,822.50 interest on June 1, 1932; failed to pay ad valorem taxes for 1930 and 1931; failed to provide insurance as provided by the contract from and after May, 1931, and that after said defaults the parties agreed to terminate the said contract, and that all parties should be released from further compliance therewith; that the payments should be considered liquidated damages,

and that Harman and his wife should be released from any further liability. Under that agreement authorization was issued by Harman and his wife to the bank to deliver contract for deed and the escrowed contract, and "thereupon said Harman and wife desiring to rent and lease lands from the plaintiff entered into a certain written lease," which is the so-called "Sheep Raising Agreement" pleaded by the defendants. Franks, in his so-called "Third Defense," says that the provisions of the agreement under which the contract was terminated were fair, just and equitable, but that in the event it should be held that the plaintiff was in fault in the termination of the contract, or that defendants are entitled to recover any money paid by them under the contract, then he is entitled to the difference in value between the land as Harman agreed to pay for it and its actual va'ue at the time of the termination of the contract; that he was also entitled to $8,000 as the fair rental value of the premises during the time the defendant occupied the land and certain taxes and insurance premiums and oil rentals, which is set out as a total of $23,597.

The trial court found that by the terms of the contract for deed, entered into on April 14, 1928, the defendants, D. B. Harman and Cora E. Harman, purchased from the plaintiff the land in question for the sum of $39,000, to be paid in certain installments, and that the defendants had paid to the plaintiff thereon, on the principal, the sum of $2,000 as down cash payments, and $4,800 in cash installments, or a total cash payment on the principal of $6,800, and had paid to the plaintiff in cash for interest a total of $5,122, together with payments in the sum of $772 credited for barley, $752 credited for lambs, $350 credited for wool, or a total of principal and interest payments of $14,118.86; that during the life of the contract, defendants had expended for repairs and improvements on the premises the sum of $1,109.89, making a total expended by the defendants, in furtherance of the contract for deed, the sum of $15,228.75; that during the life of said contract for deed, the defendants received the sum of $466 oil rentals on said land; that the defendants had enjoyed the exclusive use and benefits of said land for a period of four years, from August 1, 1928, to August 1, 1932, and that the rental value of said premises during said period of time was $8,000.

The court further found that on June 28,

1932, by mutual consent, the parties entered into an oral contract which canceled and rescinded said contract for deed; in pursuance of said oral contract of rescission, the said defendants, by a certain writing, directed the First National Bank of Hennessey, Okla., to deliver to the plaintiff the said written contract for deed and the deed, which had theretofore been held by said bank in escrow; that the consideration for such oral contract of rescission consisted of a promise made by the plaintiff to the defendants that they would not be further bound by said written contract for deed, and would be relieved from further payments or obligations thereunder, and the further promise of the plaintiff that he would lease the lands in question to the defendants for agricultural and stock-raising purposes for the period of one year ending August 1, 1933. The court further found that the plaintiff had fulfilled and executed the promises made by him, and that said agricultural and stock-raising lease had been duly executed by the parties; that the plaintiff had not practiced fraud or deceit concerning the cancellation and rescission of said contract.

The court further found that the defendants had breached said contract for deed by reason of their default in the payment of principal, interest, taxes, and insurance, as provided for therein; that the defendants are chargeable with damages sustained by the plaintiff by virtue of the depreciation in the value of said land on June 28, 1932, as compared to April 14, 1928, and that the damages sustained were in excess of all amounts paid by said defendants to the plaintiff and paid by the defendants for improvements and repairs, and that the plaintiff should recoup such damages and completely offset all moneys paid by defendants in furtherance of such contract for deed.

The assignments of error are lengthy, but, in so far as we deem them material, may be summarized to the effect that by reason of the so-called "mutual rescission" of the contract of sale of the land, the Harmans are entitled to recover all the money actually paid out by them under the contract of sale, together with all the money actually paid by them for lasting and beneficial improvement and repairs on said land, less an equitable rental for the use of the land, and that the court erred in awarding the plaintiff a recoupment of damages from defendants for breach of said contract of sale due to depreciation in value of the land and in denying defendants judgment for the money paid out by them under said contract, together with an equitable lien on said land for the amount thereof.

Other assignments of error deal with the overruling of motions, the legal phases of which are covered by the rulings on the assignments quoted, and with the court's findings of fact.

We are precluded from consideration of the question of fraud because the findings of the trial court are supported by substantial evidence. Certainly, they are not against the clear weight of the evidence; so that whether we treat the case as one of equitable or legal cognizance, we are bound by the findings of fact. Campbell v. Johnson, 131 Okla. 79, 267 P. 661; Dustin Gro. & Feed Co. v. Lucas, 91 Okla. 11, 215 P. 417; Anderson v. Moore, 118 Okla. 242, 247 P. 391.

The only remaining question to be considered is the contention of the plaintiffs in error that by reason of a so-called "mutual rescission" of the contract of sale of real estate the Harmans were entitled to recover all of the money actually paid under the contract of sale.

In this connection we find the plaintiffs in error asserting quite inconsistent contentions. We may say incompatible contentions. It is first contended that the original sales contract was canceled through fraud and deceit; next, that it was mutually rescinded. The facts show that the contract was canceled or abandoned by mutual consent and by reason of the execution of a new and wholly different and inconsistent written contract.

If the consent of the Harmans to the abandonment of the contract of sale was obtained by fraud, then there was no mutual "rescission," or, as the evidence shows, the preferable terms to be, cancellation or abandonment. There can be no mutuality in a situation induced by fraud. We shall, however, since fraud is out of the case by reason of the court's findings, discuss the respective rights of the parties under the so-called "mutual rescission" agreement as the evidence appeals to us.

The court finds, and the evidence justifies the finding, that the Harmans were decidedly in default at the time of the abandonment of the contract of sale, and that it was for this reason that the contract was abandoned. The court finds, moreover, and we agree, that there were vague discussions of a possible renewal of the contract in the future

if the Harmans should become able and willing to proceed, and that under those circumstances certain concessions would be made. The evidence discloses, moreover that when the contract was mutually abandoned by the surrender of the contract for deed then in escrow a partnership agreement was entered into, which was a new distinct consideration, and that the writing evidencing the agreement of the parties as to the raising of sheep is sufficient in itself to constitute a complete new written agreement which superseded and took the place of all oral negotiations theretofore entered into with respect to the contract of sale. It must be true that this lease and agreement recognizing Franks' title to the land is inconsistent with any claim of equitable title or right to complete the purchase which might have been evidenced by the prior contract of sale. It must be admitted that it injected new undertakings on the part of Franks and on the part of the Harmans, and it is almost indisputable that it forms the concluding and important part of the negotiations with respect to the contract of sale.

In other words, as the evidence appears to us, Mr. and Mrs. Harman, in effect, agreed to forget everything connected with the contract of sale, and as a complete substitution therefor go into the sheep raising business with Franks, because of their inability to carry out the terms of the contract of sale, and to prevent foreclosure of the same and the probable resultant judgments against them. The subsequent obvious ill feeling between the parties resulting in various suits, as shown from the record, is of no consequence in the consideration of the actual intention of the parties in the original execution of the "Sheep Raising Agreement." The cases hold, it is true, that in the event of a mutual abandonment and rescission of the contract, a vendee in default would be entitled to a repayment of his money. Hurley v. Anicker, 51 Okla. 97, 151 P. 593; Glock v. Howard & Wilson Colony Co., 123 Cal. 1, 55 P. 713; Helm v. Rone, 43 Okla. 137, 141 P. 678; Snyder v. Johnson, 44 Okla. 388, 144 P. 1035.

As is said in Glock v. Howard & Wilson Colony Co., supra, with respect to the vendor:

"* * * If his generosity prompts him so to do, he may agree with the vendee for a mutual abandonment and rescission, in which last case, and in which last case alone, the vendee in default would be entitled to a repayment of his money."

These cases, however, do not deal with a situation where at the time of the so-called mutual abandonment, cancellation, or rescission, a new and independent agreement is entered into in writing which should thereafter be treated as the only agreement between the parties respecting the land. We hold, therefore, that the written contract termed "Sheep Raising Agreement" was a contract which in its natural intendment supplanted any right which the vendees might have had under an ordinary case of mutual rescission to recover back the payments made. Such an agreement taken by and large is not that form of "mutual rescission" in which the vendor is, as above said, prompted by his generosity to agree upon a mutual rescission. It is rather an agreement in which the parties adjusting their respective rights by a new wholly different and independent agreement form new relationships and a complete change of status. If, therefore, the court had held the parties wholly precluded from setting up any action for purchase money paid by the vendees or damages to the vendor, we feel that such holding would have been justified. And such is the exact effect of the holding here.

The court finds that the damages accruing to the vendor by reason of the vendees' breach (which the court holds occasioned the abandonment of the contract) are equivalent to or greater than the amount paid in by the vendees, and the effect of the present judgment upon the vendees and upon the vendor is the same as a judgment holding that the new written contract determines the rights of the parties and the only rights of the parties under their abandonment of the prior contract of sale. Any error, therefore, asserted as to the action of the court in offsetting damages against payments was in no sense prejudicial, if error it was.

The rights of the parties were determined either by the contract of sale (if it had not been breached or abandoned) or by the Sheep Raising Agreement (if it had been in fact substituted). If the latter, no rights existed in either party to sue to recover anything on the original contract. If by the former, then the rights were mutual. If that contract still stood and was being rescinded only by virtue of this action, the rights of the parties thereunder were mutual. Such would have been the case if fraud had existed.

What, then, are the rights of the parties in such circumstances? It appears that the mutual rescission referred to in the cases above cited apply and the effect thereof is as above stated in those cases where there is a voluntary rescission by mutual consent and without fault of either party. Kershaw

v. Hurtt, 66 Okla. 117, 168 P. 202; Drew v. Pedlar (Cal.) 25 P. 749; Kyger v. Caudill, 115 Okla. 102, 241 P. 814. In any other case the damages sustained by the breach of the contract may be offset against an action for the recovery of the payments. Cullins v. E erick, 110 Okla. 132, 236 P. 886; Connelly v. Malloy (Wash.) 180 P. 469; Kyger v. Caudill, supra; Continental Oil Co. v. Bean, 171 Okla. 66, 41 P. (2d) 678.

Such damages would include the difference between the actual contract price and the actual value of the land at the time of the breach. Freed on Damages, section 508; 66 C. J. 1514; O. S. 1931, section 9970.

It is inconceivable that the parties to the contract pleaded in this case contemplated that the Harmans should receive back all their payments and Franks should bear the depreciation in the land value and donate to them the use and occupancy of the premises.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Paul Pinson, J. C. Pinkerton. and Hugh Ownby in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Paul Pinson and approved by J. C. Pinkerton and Hugh Ownby, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter upon consideration, this opinion was adopted, as modified.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur. RILEY. BAYLESS, BUSBY, and WELCH, JJ., absent.