MID-CONTINENT LIFE INS. CO. v. GOFORTH et al.

No. 29748. June 15, 1943.

Rehearing Denied Nov. 30, 1943.

*143 P. 2d 154.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for plaintiff in error.

Carey Caldwell, of Vinita, for defendants in error.

OSBORN, J. This action was commenced in the district court of Craig county by Mid-Continent Life Insurance Company, hereinafter referred to as plaintiff, against Rachel M. Goforth and A. P. Goforth, hereinafter referred to as defendants. Plaintiff sought judgment upon a promissory note and the foreclosure of a real estate mortgage on 300 acres of land in Craig county. Defendants filed an answer wherein they alleged fraud, failure of consideration, and that there had been no lawful delivery of the notes and mortgage to plaintiff. The cause was tried to a jury and a verdict was returned in favor of defendants. From a judgment on the verdict, plaintiff has appealed.

After the entry of judgment in the trial court, Rachel M. Goforth died and the cause was revived in the name of her heirs.

The note and mortgage involved herein were executed on September 1, 1924, as a part of a transaction for the purchase of a tract of land in the Rio Grande Valley in Cameron county, Tex. The American Land Company owned several thousand acres of the Texas land which it was offering for sale. A large portion of this land had been purchased from the plaintiff company, which company held a mortgage against the land to secure an unpaid balance of the purchase price.

The contract for the purchase of the property was in writing. The tract of land involved consisted of 20 acres and the consideration was $12,000. The down payment was $6,000, and the balance was to be secured by vendor's lien notes. In order to procure the $6,000 which was to constitute the down payment, the agent of the land company, one Eldo Smith, suggested to the defendants that a loan might be procured from plaintiff company to be secured by a mortgage upon the 300 acres of land involved herein. One of said tracts of land was encumbered with a prior mortgage to the Oklahoma Farm Mortgage Company in the principal sum of $1,500, and in order to pay that loan and clear the title to the land and procure sufficient funds to make the down payment on the Texas land, the application was made to plaintiff company in the sum of $7,500. It appears that plaintiff company was agreeable to the making of the loan, the note and mortgage were executed to it, and on January 15, 1925, plaintiff paid the Oklahoma Farm Mortgage Company the amount of the indebtedness owing to it and procured an assignment of the principal mortgage and the commission mortgage theretofore held by said company.

As heretofore stated, the land company was indebted to the insurance company in a considerable amount. The minutes of the meeting of the finance and extension committee of the insurance company, dated December 31, 1924, discloses that a credit of $6,000 was given to the land company "upon their $285,000 mortgage held by this company." The credit was ∙identified as "the A. P. Goforth loan."

The land company and the plaintiff insurance company are separate, corporate entities, but the negotiations for the sale of the land and for the loan of the money were conducted by individuals who occupied major offices in both companies. The transactions with defendants were held by Eldo Smith, R. T. Stuart, and O. E. Stuart. Smith was an agent of the land company; R. T. Stuart was president of the plaintiff

insurance company and vice president of the land company; O. E. Stuart, his brother, was president of the land company and treasurer of the insurance company and a member of the finance and extension committee of the insurance company, which committee, at times, exercised the powers of a board of directors.

After the execution of the contract of sale and the execution and delivery of the note and mortgage involved herein, defendants moved upon the Texas land and lived there for approximately 15 months, but the contract for the purchase thereof was never consummated. The evidence with respect to the failure to complete the purchase of the land is in hopeless conflict. Defendants' evidence was to the effect that plaintiff failed to furnish an abstract of title to the land, and that by independent investigation they learned that the title was defective. Plaintiff's evidence was to the effect that the abstract was tendered to defendants and that there was no defect in the title of the land company.

On September 29, 1925, defendants mailed a check to the land company in payment of rental on the premises for the year 1925, which check was in the sum of $253.40. The company retained the check, but did not cash it. Shortly thereafter, defendants abandoned the premises. On January 12, 1926, the land company notified defendants in writing that unless the contract was completed within ten days the amount paid upon the purchase price would be declared forfeited. The present action was instituted on May 31, 1928, and came on for trial in the court below on February 9, 1939.

Plaintiff does not claim to be a holder in due course of the negotiable paper involved herein. The execution of the note and mortgage were admitted in the answer of the defendants, but plaintiff voluntarily assumed the burden of proof and presented considerable evidence for the purpose of establishing a valid delivery of the note and mortgage and a good and valuable consideration there-

for. It is noted that no part of the funds for which the note and mortgage were security were ever delivered to defendants. Plaintiff company does not contend that it had written or oral authority directed to it from defendants to enter a credit to the land company upon its own books in the sum of $6,000. In this connection R. T. Stuart, president of the plaintiff company, testified upon cross-examination that when the finance and extension committee of plaintiff company authorized a credit to the land company of $6,000, it was known that the deed to the Texas property had not been delivered and that the defendants had not signed the vendor's lien notes. The witness testified further "that the deal was closed so far as we were concerned when the contract was signed and the payment made, except the deed had to be delivered and the notes signed." The contract referred to by the witness was the contract of sale dated August 5, 1924, which is hereinafter quoted, and which specifically provides for a down payment of $6,000 in "cash by loan to be made . . . by the Mid-Continent Life Insurance Company on Oklahoma land near Vinita, Oklahoma . . ."

The land company and the insurance company are separate, corporate entities. It is the general rule that a corporation is an entity separate and apart from the persons composing it, but the rule has its limitations. Both law and equity, when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice, disregard the distinct existence and treat them as identical. Caldwell v. Roach, 44 Wyo. 319, 12 P. 2d 376. The doctrine that a corporation is a legal entity, separate and apart from the persons composing it, is a legal theory introduced for purposes of convenience and to subserve the ends of justice, but the concept will not be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of said policy will be disregarded by the courts. 13 Am. Jur., Corporations, § 7, p. 160.

It is the general rule that instruments

executed at the same time, and for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together, as if they were as much one in form as they are in substance. The principle is applicable to cases where negotiable instruments and a written agreement are executed at the same time by the same parties. The resulting contract is to be determined by a construction of both in accordance with conventional rules. Myrick v. Purcell, 95 Minn. 133, 103 N.W. 902. In some jurisdictions it has been said that the note and other writing "may be construed as one paper"; that the note and contract are to be construed together as an entire contract, stipulations of which are mutual and dependent rather than independent and collateral. Seaman v. McNamara, 180 Wis. 609, 193 N. W. 377. See, also, Sutton v. Beckwith, 68 Mich. 303, 36 N. W. 79, 13 Am. St. Rep. 344; Caldwell v. Roach, supra.

We have held many times that where two instruments, though not executed at the same time, refer to the same subject matter and on their face show that each was executed to carry out the intent of the other, both should be construed as one contract.

It is clear that the parties, by their acts and conduct, have treated the transactions for the sale of the land and for the loan of the money as a single transaction, and for the purpose of this opinion the contract of sale and the note and mortgage will be treated as a single instrument, and the theory that the respective corporations are legal entities and separate and distinct from the persons composing them will be disregarded. There is no contention that the parties who negotiated the transactions involved herein were without authority to bind the respective corporations.

The plaintiff company has elected to join issue with defendants upon their plea of failure of consideration, and since it paid no funds directly to defendants, and had no direct authority from them to disburse the funds for which the mortgage is security, it places reliance wholly upon the enforceability of the provisions of the contract of sale in order to sustain its position with respect to the issue of consideration. Adverting to said contract it appears that the same contained alternative provisions with respect to the $6,000. If the contract was completed, said sum was to be the down payment on the Texas land, otherwise it was to be forfeited as liquidated damages. The contract was not completed, so the single issue emerging from the fact situation presented herein is whether or not the plaintiff company may enforce the provisions of the sale contract relating to liquidated damages. Defendants contend that the forfeiture provision of the contract is invalid and unenforceable in that it provides for the imposition of a penalty. The provisions of the contract, necessary to present the issue, are as follows:

"This contract in writing made and entered into this fifth day of August, A. D. 1924, by and between The American Land Company of Texas, a Corporation, hereinafter referred to as Party of the First Part, and A. P. Goforth of the City of Vinita, County of Craig, State of Oklahoma, hereinafter referred to as Party of the Second Part, Witnesseth:—

"That Party of the First Part, for the consideration hereinafter named, hereby agrees to sell, and by these presents does sell to Party of the Second Part, and Party of the Second Part agrees to buy and does by these presents buy from Party of the First Part, hereinafter described land.

"The payment to accompany this Contract is evidenced as follows:

"Cash by loan to be made $6,000.00.

"Promissory Note due subject to loan of $6,000 being made by the Mid-Continent Life Insurance Company on Oklahoma Land near Vinita, Oklahoma, to apply on first payment $6,000.00.

"The above mentioned Cash and Notes are received as Earnest Money paid on the purchase price of the following described land, situated in the County of Cameron, State of Texas, and more par-

ticularly described and shown by a plat of record in the office of the County Clerk of Cameron County, Texas, as Lot No. N-½ of Block No. 8, Survey 138, of the Stuart Place Subdivision, containing 20 acres, more or less, and being the lands which the Second Party hereby agrees to buy for the total sum of $12,-000.00, being $600.00 per acre.

"(1) *The earnest money herein provided shall be forfeited to Party of the First Part as liquidated damages, if on tender to said Second Party of a good and sufficient deed he refuses or neglects to accept the same, or refuses or neglects to execute the Vendor's Lien Notes or other obligations called for herein. In the event of such refusals or failure, or either of them, Party of the First Part shall be relieved of all obligations under this Contract.*

"(2) For the balance of the purchase price, viz: $6,000.00, said Second party agrees to assume, or to execute and deliver to Grantor Vendor's Lien Notes, secured by the above described land, said notes to be in five equal annual payments, due one to five years, respectively, after date, with the usual provision for the payment of attorney's fees, and providing for the maturity of the whole series of such Notes upon default, which said notes shall be of even date, herewith, and on the usual Texas Form, and shall bear interest at the rate of six per cent per annum from date until maturity, and thereafter at the rate of ten per cent per annum until paid, interest payable annually.

"(3) On the payment of the above mentioned Earnest Money Notes, it is agreed that First Party then will execute or cause to be executed a Warranty Deed of even date herewith, reserving a Vendor's Lien to secure the payment of the series of notes hereinbefore described, together with Owner's Water Contract now running with said land, for water rights to irrigate said lands, with the usual exceptions and reservations for canals, laterals, roads, etc., and to deliver said deed, together with abstract of title, showing a merchantable title in the Grantor in the deed."

15 O. S. 1941 § 213 provides:

"Penalties imposed by contract for any nonperformance thereof, are void.

But this section does not render void such bonds or obligations, penal in form, as have heretofore been commonly used; it merely rejects and avoids penal clauses."

15 O. S. 1941 § 214 provides:

"Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by the next section."

15 O. S. 1941 § 215 provides:

"A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

It is the general rule that a provision of a contract which undertakes to fix a penalty as liquidated damages for failure to receive and pay for real property, as contracted for, is void, if the actual damages which may be suffered by the seller through the breach are capable of proof. Mager v. Silverstone, 55 Wash. 159, 104 P. 165, 34 L. R. A. (N. S.) 1; O'Keefe v. Dyer, 20 Mont. 477, 52 P. 196; Irvin v. Lambert (Tex. Civ. App.) 70 S. W. 2d 495; Beaden v. Bransford Realty Co., 144 Tenn. 395, 232 S. W. 958; Real Estate & Mort. Co. of Louisville v. Duke, 251 Ky. 385, 65 S. W. 2d 81; Zenor v. Pryor, 57 Ind. A. 222, 106 N. E. 746; 25 C. J. S., Damages, par. 113, p. 687, and authorities cited; 17 C. J., Damages, par. 254, p. 956, and authorities cited.

Although our attention has been directed to no case from this court where the rule has been applied to transactions for the sale of real property, it has often been applied when sales of personal property were involved. See Consolidated Flour Mills Co. v. Wright, 131 Okla. 22, 267 P. 464; Kansas Flour Mills Co. v. Ballard, 120 Okla. 162, 250 P. 1006; J. I. Case Plow Works v. Stewart, 70 Okla. 210, 173 P. 1048; Home Bakery of Carnegie v. Robinson Milling Co.,

170 Okla. 349, 40 P. 2d 637; C. I. T. Corp. v. Fisher, 187 Okla. 314, 102 P. 2d 848.

Where it is doubtful whether a provision should be deemed a penalty or liquidated damages, the courts incline to regard it as a penalty, for by so doing the recovery can be apportioned to the actual damages or the loss actually sustained. Sonken-Galambra Corp. v. Abels, 185 Okla. 645, 95 P. 2d 601. The fact that the parties to a contract call a sum stipulated to be paid in case of its breach "liquidated damages" is by no means controlling or conclusive. Such contracts may be and often are held to provide for a penalty. 15 Am. Jur., Damages, par. 246, p. 677. The question whether the amount stipulated to be paid upon failure of performance is to be treated as liquidated damages, or as a penalty, is, in its last analysis, a question of law for the court, to be determined from the language and subject matter of the contract, the evident intent of the parties, and all the facts and circumstances under which the contract was made. McAlester v. Williams, 77 Okla. 65, 186 P. 461; Lorraine Petroleum Co. v. Bartlett, 138 Okla. 8, 280 P. 286. See, also, Annotation, 138 A. L. R. 598.

The measure of damages for breach of agreement to purchase real property is fixed by the provisions of 23 O. S. 1941 § 28, which is as follows:

"The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him."

See Doak v. Angle & Angle, 185 Okla. 579, 95 P. 2d 638; Central Commercial Oil Co. v. Indian Territory Illuminating Oil Co., 171 Okla. 30, 41 P. 2d 683; Annotation, 52 A. L. R. 1511.

The provisions of the contract under which the vendor retained the sum of $6,000 provides for the forfeiture of "the earnest money herein provided . . . to the party of the first part as liquidated damages, if on tender . . . of a good and sufficient deed he refuses or neglects to accept the same or refuses or neglects to execute the vendor's lien notes or other obligations called for herein." It is noted that the amount retained constitutes one-half of the total purchase price, and since there is no showing that it would be impracticable or extremely difficult to fix the actual damage sustained by the failure of defendants to complete the contract, we hold that said contract imposes a penalty for nonperformance thereof and the penalty provisions of said contract are therefore void and nonenforceable notwithstanding the language of the contract to the effect that the forfeiture shall be deemed "liquidated damages."

Plaintiff argues that this is not an action imposing a forfeiture of a down payment for failure to comply with a contract, since the plaintiff was not a party thereto; that plaintiff is neither attempting to forfeit nor enforce the sales contract; that its right to recover is predicated upon the rule that where a buyer has made a down payment, and, without legal excuse, fails to proceed and complete the contract, he cannot recover what he has paid. See Hurley v. Anicker, 51 Okla. 97, 151 P. 593; Kershaw v. Hurtt, 66 Okla. 117, 168 P. 202; Toomey v. Sporn, 145 Okla. 38, 291 P. 22; Bishoff v. Myers, 101 Okla. 36, 223 P. 165; Gibson v. Brannum, 107 Okla. 130, 230 P. 861. These authorities are not applicable to the fact situation presented in the instant case. This is not an action by a buyer to recover a down payment after the breach of the contract of purchase, but this, in effect, is an action by a vendor to enforce, as against the vendee, payment of a sum stipulated by the sale contract to be a down payment or, in the alternative, "liquidated damages" for failure to complete the contract, and since the contract was not completed, the action is, in fact, one to enforce a penalty and, under the authorities hereinabove referred to, such an action must fail.

What we have said refers only to that portion of the borrowed funds which

320

was credited by the insurance company to the land company and has no reference to the funds paid by the plaintiff company to the Oklahoma Farm Mortgage Company resulting in the release of the former mortgage. It is a well-settled rule in this jurisdiction that one who lends money upon real estate security for the express purpose of paying off encumbrances upon the same property, believing in good faith that his security will be substituted of record for that discharged, is not a volunteer or intermeddler, and, upon failure to obtain a valid lien, is entitled to be subrogated to the prior valid lien to the extent of encumbrances which he has discharged. Equitable Life Assurance Soc. v. McFadden et al., 181 Okla. 162, 72 P. 2d 795; Landis v. State ex rel. Com'rs of Land Office, 179 Okla. 547, 66 P. 2d 519, and authorities therein cited. The record does not show bad faith on the part of plaintiff in paying and discharging the former mortgage of the Oklahoma Farm Mortgage Company, and we hold that plaintiff is entitled to be subrogated to the lien of said mortgage and is entitled to enforce said lien by appropriate proceedings, and the judgment of the trial court is, in part, reversed and the cause remanded for that purpose.

Accordingly, the judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings in accordance with the views herein expressed.

CORN, C. J., GIBSON, V. C. J., and RILEY, BAYLESS, WELCH, and HURST, JJ., concur. DAVISON, J., concurs in conclusion. ARNOLD, J., absent.