John J. REID and Karen M. Reid, Husband and Wife, Appellants,

v.

Mike AUXIER and Lee Auxier a/k/a Margaret Auxier, Husband and Wife, Appellees.

No. 60308.

Court of Appeals of Oklahoma, Division No. 4.

June 26, 1984.

Rehearing Denied Aug. 3, 1984.

Certiorari Denied Nov. 6, 1984.

Released for Publication by Order of the Court of Appeals Nov. 9, 1984.

Donald E. Herrold, Herrold, Shelton & Herrold, Inc., Tulsa, for appellants.

M.W. Kriegel, P.C., Tulsa, for appellees.

BRIGHTMIRE, Judge.

Two fundamental questions arise in this review. One, is a liquidated damages provision in a real estate sales agreement valid? Two, does the contract here prevent the sellers from pursuing any remedy provided by law? The trial court held that the liquidated damages clause in the parties' sales contract was valid and prohibited plaintiffs from obtaining more than $2,500 for buyers' refusal to close the sale.

We hold, however, that to the extent the liquidated damages agreement purports to be binding on either party it is against public policy and void. We further hold that subject contract does not otherwise prohibit plaintiffs from recovering their actual legal damages. The summary judgment in favor of plaintiffs for $2,500 is vacated as to the amount of damages awarded.

I

Facts controlling the resolution of the legal question raised are not disputed.

Plaintiffs, John and Karen Reid, owned an improved ten-acre tract of land in the City of Broken Arrow, Wagoner County, Oklahoma. On July 25, 1981, they contracted with defendants, Mike and Lee Auxier, for the sale of subject realty for $140,000. The contract provided for, among other things, an earnest money deposit of $2,500, a closing date on or before August 15, 1982, and in paragraph 3, a financing condition to the effect that the Auxiers would promptly seek and be able to obtain a conventional thirty-year loan in an amount equal to at least 70% of the purchase price at an interest rate of not more than 15% plus discount points of not more than 2.5%.

The contract was on a printed form furnished by the selling broker, defendant Merrill Lynch Realty/Detrick Company—a form "approved by the Metropolitan Tulsa Board of Realtors." The problem in this case arises out of paragraph 8 which reads:

"**8. BREACH OR FAILURE TO CLOSE:** Subject to the provisions of paragraph 3 [financing condition], if, af-ter the Seller has performed Seller's obligations under this Contract, and if within five (5) days after the date specified for Closing under paragraph 7 the Buyer fails to make the payments or to perform any other obligation of the Buyer under this Contract, then all sums theretofore paid on the purchase price shall, at the option of the Seller, be retained as such or as liquidated damages for the breach of this Contract by the Buyer. The Seller and Buyer agree that such amount is a reasonable amount for liquidated damages and that it would be impractical and extremely difficult to determine actual damages. In such latter event, the Seller and Buyer agree that the undersigned Broker(s) may retain and shall be paid from such funds one-half of such retained funds, not exceeding the agreed commission for services in obtaining this Contract. If the conditions in paragraph 3 are met, or waived, the Buyer shall perform all of the obligations of Buyer hereunder, and if Seller breaches this Contract or fails to perform any of Seller's obligations hereunder, then Buyer shall be entitled either to cancel and terminate this Contract, return the abstract to Seller, and receive a refund of the earnest money or pursue any other legal remedy."

In a letter dated December 1, 1981, the Auxiers advised Merrill Lynch Realty that they had contacted four different lending institutions and were unable to obtain a loan within the contractual parameters. Consequently they said they considered the contract void and requested the broker to obtain a "written release" from the Reids and to refund the $2,500 earnest money deposit.

On May 18, 1982, Reids' attorney wrote Auxiers' lawyer saying the Reids were willing to finance 70% of the purchase price ($98,000) on a thirty-year payout at an annual rate of interest of 15% plus a point payment of 2.5%. A conforming note and mortgage were enclosed in the letter with a reminder that all contractual contingencies had been met and that therefore closing

should be held May 24, 1982. The contingencies referred to included sellers' furnishing an abstract of title which had been done. It had been examined by purchasers' lawyer and the title passed without any objection.

Auxiers' lawyer found no fault with the proposed note and mortgage, but the purchasers nevertheless declined to perform.

This action was filed June 11, 1982, in which in material parts the Reids asked for $29,000 actual and $10,000 punitive damages for the Auxiers' breach of the contract and fraudulent misrepresentation of their financial ability to perform.

The Reids relisted their property November 15, 1982, and on February 5, 1983, it was sold to another party for $115,000—$25,000 less than what the Auxiers had agreed to pay.

Both parties moved for summary judgment. These motions were heard April 26, 1983. The court held as a matter of law that: (1) the failure of the purchasers to close on May 24, 1982, was a breach of the sales contract; (2) the liquidated damages provision (paragraph 8) "is a bargained-for, unseverable provision of the . . . contract, and Seller (Plaintiffs) [sic] is estopped to introduce evidence on the issue of actual damages; that . . . notwithstanding the provisions of Title 15 O.S. § 214, Seller is limited to recovery of the earnest money deposit . . . ."

The court thereupon granted plaintiffs a summary judgment for $2,500. Plaintiffs appeal, contending the liquidated damages clause is void because they can easily prove recoverable damage.

## II

For the purpose of disposing of plaintiffs' single contention, we will assume, as the parties do, that the liquidated damages clause in question is an agreement that bindingly fixes the amount of damages in the event of a breach by either party. At the same time we want to state, parenthetically, that paragraph 8 is so loosely drawn that the provisions are equivocal if not ambiguous. Though an amount is fixed, it does not appear to us that either party is required to accept the set sum—an effect that will be dealt with later.

In order to determine whether the liquidated damages provision in question is enforceable, it is necessary to review the controlling law. It is set out in 15 O.S.1981 §§ 214 and 215. The first section reads:

"Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by the next section." (footnote omitted)

Section 215 reads:

"A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

The plain language of these statutes declares that liquidated damages clauses in contracts are void unless the nature of the breach is such that it would be "impracticable or extremely difficult to fix the actual damage." This law is augmented by yet another statutory curtailment of a liquidated damages clause; that is, if the amount of liquidated damages agreed upon is such as to be in effect a penalty, it is void under the terms of 15 O.S.1981 § 213, which specifies that "[p]enalties imposed by contract for any nonperformance thereof, are void." Thus it was held in *Mid-Continent Life Ins. Co. v. Goforth*, 193 Okl. 314, 143 P.2d 154 (1943), that where land was being sold for $12,000 and the contract provided for a $6,000 cash down payment which was to be retained by seller as liquidated damages in the event buyer

failed to perform, the provision would be regarded as a penalty and therefore void.[1]

██ The measure of damages established by 23 O.S.1981 § 28, for the breach of an agreement to buy an interest in real estate "is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him." This language has been construed to mean "the difference between the actual contract price and the actual value of the land at the time of the breach." *Harman v. Franks,* 178 Okl. 560, 565, 63 P.2d 54, 59 (1936).

██ The question, then, that evolves from this law may be framed this way: is it impracticable or would it be extremely difficult for the trial court to determine the difference between the contract price defendants agreed to pay and the actual or fair market value of the property at the time of the breach? We hold it would be neither impracticable nor extremely difficult and therefore the liquidated damage proviso is void.

██ We further hold that paragraph 8, dealing as it does with the subject of remedial recourse in the event of a failure to close, is independent of the primary purpose of the contract—the sale of certain real property—and is therefore severable.[2]

Though the defending Auxiers recognize the import of the statutory law, they say section 214 has been "drafted around" in the form contract by inclusion of a stipulation that the amount of liquidated damages is reasonable "and that it would be impractical and extremely difficult to determine actual damages." This language, defendants argue, cloaks paragraph 8 with the

saving protection of section 215 and, in effect, nullifies the force and effect of section 214. The legal catalyst recommended by defendants to accomplish such neutralization of section 214 is the equitable doctrine of estoppel—that is, the court should declare that each party is estopped from asserting a position inconsistent with the stipulation.

██ This approach, while perhaps resourceful, has a fatal flaw. It requires us to hold that contractual terms declared by law to be against public policy may be enforced in our courts if the parties so stipulate in the contract. The effect of the stipulation in question is that the parties agreed in advance of any breach that it would be impractical or extremely difficult to determine the difference between the contract price and the fair cash value of the property at the time of the breach. This is an impermissible attempt to contravene public policy and is therefore void.

██ The burden of establishing the section 215 exception—that it is impracticable or extremely difficult to prove actual damages—remains upon the party seeking enforcement of the fixed damage clause, and the stipulation does not shift such burden. *Waggoner v. Johnston,* 408 P.2d 761 (Okla. 1965).

We are not prepared to hold with defendants on their estoppel theory. If it is true, as defendants contend, that the market place will find it difficult to live with sections 214 and 215, then the solution is not judicial nullification but legislative modification.

---

1. *Diehl v. Welsh,* 393 P.2d 834 (Okla.1964), which was an action by a nonperforming buyer to recover a down payment, referred to a distinction mentioned in *Goforth* between some earlier cases in which buyers sought recovery of a "down payment" and a factual situation wherein a party is trying to retain "liquidated damages," as in *Goforth.* While *Diehl* may have missed the main import of the *Goforth* language, the result it (*Diehl*) reached was not inconsistent with *Goforth* or earlier cases, be-

cause it merely involved a buyer trying to get his down payment back; he was not seeking damages for a contract breach, liquidated or otherwise.

2. See *Board of Com'rs of Kingfisher County v. Vahlberg,* 198 Okl. 527, 180 P.2d 144 (1947) for a discussion of criteria to be considered in determining whether a contract is "entire" or "severable," that is, susceptible to division and apportionment.

### III

There is yet another and much stronger reason why summary judgment is wrong—one which emerges from an analysis of paragraph 8—and that is that the terms do not actually require either party to accept an agreed-to amount of liquidated damages or forbid the pursuit by either party of all available remedies afforded by law.

Paraphrased, the previously quoted paragraph 8 provides both buyer and seller optional alternatives to the acceptance of the agreed amount of liquidated damages. Should the Seller breach the contract, "Buyer shall be entitled either to cancel and terminate this Contract ... and receive a refund of the earnest money *or* pursue any other legal remedy." (Emphasis added). If the Buyer fails to perform, then the Seller has the "option" of retaining the down payment "as liquidated damages for the breach of this Contract by the Buyer."

Granting sellers such an option means that sellers may opt not to accept the down payment as their full measure of damages and implies they have the same rights granted buyers—to "pursue any other legal remedy."

This construction of paragraph 8 not only affords the parties a judicially favored mutuality of remedies, but averts the necessity of condemning the liquidated damages provision as being contrary to section 214, and, more importantly, permits the continued use of paragraph 8's form and substance to amicably settle breach of contract disputes in a great many situations in which neither party will want to litigate.

The summary judgment appealed is reversed as to the amount of damages awarded plaintiffs and remanded for further proceedings limited to determining the amount of legal damages sellers have sustained.

DeMIER, P.J., and STUBBLEFIELD, J., concur.