Sidney C. SHAW, Appellee,

v.

Ronald G. FERGUSON and Ron Willis, d/b/a Willis & Associates, Appellants.

No. 64548.

Court of Appeals of Oklahoma, Division No. 4.

May 20, 1986.

William J. Baker, Hert, Baker & Kistler, Stillwater, for appellee.

David S. Eldridge, Oklahoma City, for appellant Ronald G. Ferguson.

BRIGHTMIRE, Presiding Judge.

The issues in this appeal arise from a failure to finalize and close a sale of some Payne County land. The trial court concluded such failure was defendant's fault in not tendering the purchase price and awarded the plaintiff seller a judgment for $10,000—the amount of liquidated damages called for in the sales agreement—and $2,000 more for his attorney fee expense. Defendant buyer's counterclaim for specific performance was not adjudicated. Defendant appeals.

I

The significant background facts are these. On October 31, 1984, a real estate contract of sale was finalized between the plaintiff seller, Sidney C. Shaw, and the defendant buyer, Ronald G. Ferguson. The subject of the sale was some unimproved land near Stillwater, Oklahoma, and the agreed price was $212,000. The contract called for the buyer to place $10,000 earnest money in escrow with defendant Ron Willis and pay the balance at time of closing. The further agreement was that the seller would pay a real estate commis-

sion of $12,000 to Willis and that closing was to take place "5 days after notice of Buyer to Seller but not later than 30 days after receipt of abstract" unless requirements were made within 15 days in which event seller would have 30 days to correct any curable defect unless a longer time was agreed to. And finally, a default clause specified that "(a) If the Buyer wrongfully refuses to close, the Seller and Buyer agree that since it is impracticable and extremely difficult to fix the actual damages sustained, the Earnest Money shall be forfeited as liquidated damages to the Seller. The Seller may, at his option, seek specific performance. (b) If the ... Seller wrongfully refuses to close, the Buyer's Earnest Money Deposit shall be returned and the ... Buyer may, at his option, seek specific performance. (c) In the event a suit for specific performance is instituted, the prevailing party shall have the right to recover all such party's expenses and costs incurred by reason of such litigation including but not limited to attorney's fees, court costs and costs of suit preparation."

This action was filed by Shaw on January 23, 1985, seeking an order directing Willis to pay the $10,000 into court and granting plaintiff a judgment for that amount against defendant Ferguson along with an additional sum for his attorney fee.

Defendant Ferguson filed an answer denying he had defaulted or breached any term of the purchase contract and counterclaimed for specific enforcement of the contract together with a judgment against Shaw for costs, attorney fee and other litigation expenses as provided for in paragraph 8(c) of the contract.

The case was tried to the court on May 30, 1985. The principal issue of fact centered around a closing date—whether the parties had orally agreed to close on January 11, 1985.

There are certain gaps in the evidence which, while perhaps not omissions of essential evidence, do concern circumstances which could be helpful in determining the true facts and where the equities lie. For instance the record does not disclose when the required abstract was furnished to the defendant buyer, what title requirements were made by the buyer, or how long it took the seller to satisfy them. In other words there is no evidence in the record as to when the "contractual" closing date was. The closing date controversy which precipitated this lawsuit centers not on the terms or breach of the written agreement but around a second oral closing date agreement.

The first closing date was evidently set sometime around December 21, 1984, because it was on that date that the seller agreed to postpone the closing if the buyer would pay some interest. Buyer agreed and gave seller a check for $1498.98 which recited, "Interest—closing delay $71.38 per diem." [1] The parties agree this check provided interest to January 3, 1985, with an agreed closure on January 4, 1985.

Before this first post-contractual date arrived, however, a second one was discussed and the facts concerning it are a little less distinct. Both parties say they were ready, able and willing to close on January 4 in Oklahoma City, but neither showed up at the agreed time and place. Defendant said he did not appear because on January 2 he talked with Barden Kellum, an employee of plaintiff who was taking "care of the details ... the legwork, to get the closing arranged," and requested the closing be postponed a week.

"I told him [Kellum] I had some pressing family obligations and asked him if we could make it the following week, Friday, the 11th ... of January," defendant said. "He said it was okay with him. I'd for sure have to pay some interest, and I'd have to send a check for that interest. He'd have to have that; he'd have to talk to Shaw, and he'd get back to me if there was any problem with that."

1. There is testimony that the title requirements made by defendant's attorney had not all been met by the last week of December 1985. Defendant did not know this when he sent the December 21 interest check.

Shaw, on the other hand, said he did not show up because he had "heard" Ferguson was not going to be at the rendezvous.

Ferguson in the meantime wrote a check dated January 3, 1985, payable to Sidney Shaw in the sum of $499.66 and mailed it to Shaw. Defendant did not hear back from Kellum or anyone else on or before the 4th, although he was in town until the latter part of the week. He received word about 4:30 in the afternoon on the 4th from Ron Willis that Shaw "was very angry and ... he was not going to close the deal at all."

"I told him [Willis] ... to see what he could do to get it worked out. I really wanted to close the property, and I wanted to get along with Shaw, because he was going to be my neighbor."

A few days later Shaw began to demand the $10,000 earnest money and Ferguson insisted on closing the transaction. This lawsuit was filed by Shaw on January 23, 1985, against Ferguson and Ron Willis, the escrow agent, to recover the $10,000 earnest money.[2]

Plaintiff's version of what happened on January 2 differs to some extent. Shaw admitted he had agreed to some closing date changes. "I did not do the negotiations," he said, "I talked with Barden Kellum. We changed the closing dates two or three times." This, in substance, was the extent of his testimony on the subject. He did not say anything specifically about the January 2 request.

Kellum did, however. After stating that his duties consisted of "the legwork," and getting "everything ready to close and make contacts with the party to arrange for closing and set the deal up ...," he said he took "care of the various requirements" so he could close on January 4.

Kellum's testimony concerning why the deal was not consummated on that date was this: "To the best of my knowledge," he said, "Mr. Ferguson could not meet. He had other circumstances he could not meet with us on the 4th. The whole problem, I feel like, was Mr. Ferguson." The reason for his "feeling" was a conversation he said he had with Ferguson on the morning of January 2. "At that time Mr. Ferguson informed me that he had other obligations and he needed more time. I did not agree to more time." Instead, Kellum said he told Ferguson, "I am not at liberty to extend time. I do not make that decision. I will have to talk to Mr. Shaw and get back with you."

"If Mr. Shaw were to grant an extension, would you be willing to pay interest?" Kellum said he asked.

"Yes," said defendant Ferguson.

Evidently to escape the import of having received the second interest check Kellum testified he told Ferguson not to "send me any money until I talk to Mr. Shaw and I will get back to you."

Kellum said he talked to Shaw around noon. The agent, however, did not reveal the nature of that conversation or the result of it, but said only that after talking to Shaw he tried to reach Ferguson on January 2 and 3 but was unable to. He admits receiving the second check but held it and later gave it to Shaw's attorney who returned it to defendant in a letter making a demand on him for the $10,000 earnest money because of having "breached the terms of that contract by your failure and refusal to close the transaction within thirty (30) days after receipt of the abstract and ... the additional period of time which was granted to you by oral agreement."

The transcript of testimony does not disclose a pronouncement of judgment from the bench but the following was signed by the judge and filed May 30, 1985:

### STATEMENT OF FACTS AND CONCLUSIONS OF LAW

1. No written amendment to extend the time of closing was signed by the parties.

---

2. On January 24, 1985, the trial court issued an order for Willis to deposit the $10,000 earnest money with the court clerk to await the further order of the court. No action has ever been taken and no adjudication has been made with regard to defendant Willis.

2. The receipt of the check in the amount of $1498.98 on December 21st operated to extend the closing up through January 3, 1985.

3. There was no verbal agreement or checks or any other evidence indicating that closing was to be extended beyond January 4, 1985.

4. The plaintiff was ready, willing and able to perform. The defendant never tendered the purchase price.

5. The contract was prepared by the defendant's agent.

6. The plaintiff never requested that the closing date be extended.

Judgment for the plaintiff in the amount of $10,000.00, and attorney fee in the amount of $2000.00.

DATED this 30th day of May, 1985.

/s/   Ray Lee Wall

RAY LEE WALL, District Judge[3]

Defendant appeals asserting that it was error to (1) award plaintiff a judgment for $12,000, and (2) deny defendant's claim for specific performance of the contract.

## II

■ Defendant's main complaint about the judgment awarded plaintiff focuses on these points: (1) The findings of the trial judge are clearly against the weight of the evidence; (2) the time for closing was not of the essence in the written original contract and its terms relating to a time for closing as superceded by one executed oral agreement and an apparent misunderstanding as to a second oral agreement; and (3) the liquidated damage provision in the writ-

ten contract was void under the statutes of this state.[4]

An analysis of the trial court's foundational findings would be a good place to begin our quest for a solution to the problems presented.

The first finding—that there was no "written amendment" to extend the closing date—is an immaterial one. The important fact is that there is no dispute about the terms of the fully executed oral agreement, as the judge recognized in his second finding.

The third finding is a critical one relating evidently to the January 2 negotiations for a second extension. But the finding of "no verbal agreement" is neutralized by alternative factual findings which are contrary to the record. Such ambivalence renders the third finding valueless as a foundation for molding suitable equitable relief in this case.

■ The fourth finding is fatally deficient. It does not mention when or where plaintiff was "ready" to close. For instance, it is apparently undisputed that plaintiff was not "ready" to close until after the first of the year, nor did plaintiff show up on January 4 at what plaintiff contends was the agreed time and place and stand ready to tender an executed deed to the subject land. Further, finding four does not find defendant was not at all times ready, willing and able to perform. The implication that the buyer was required to tender the purchase price before being offered a deed by plaintiff is not compatible with law or equity. *Ace Realty, Inc. v. Looney*, 531 P.2d 1377 (Okl. 1974).

The motion to dismiss the appeal on that ground is denied. A new point of error was not raised by the argument. The error complained of in the petition in error was the awarding of the $10,000 judgment. The statutory invalidity of the default forfeiture clause was offered as simply another reason why it was error to have awarded the $10,000 judgment.

---

**3.** This "judgment" it will be noticed does not adjudicate defendant's counterclaim for specific performance. This means that the judgment appealed is not a final one and casts grave doubt on our jurisdiction to review.

**4.** This point was first mentioned in defendant's reply brief and drew a motion to dismiss from plaintiff in which it is argued that the "appeal" should be dismissed because the point of law was a new "issue of damages" presented for the first time in his reply brief.

■ The fifth finding besides being irrelevant to the material issues—there is no dispute about the terms of the written contract—is at war with the undisputed facts. The sales contract consisted of filling in blanks on a form produced by the "Oklahoma City Metropolitan Board of Realtors, Inc., 1982." Regardless of whose agent filled in the blanks initially, Mr. Shaw himself made several changes by striking out some of the printed terms and writing in new terms. Thus the contract was "prepared" by both parties—each of whom incidentally was an experienced real estate investor or broker.

The sixth and final finding—that plaintiff never requested that the closing date be extended—is another immaterial one which is likewise unsupported by the record. As we said earlier, there is no evidence as to if, how or when the first closing date or dates were set or whether either party requested an extension up until December 21. All that can be divined from the record is that on December 21 an oral agreement to close on January 4 was made.

■ Standing alone these findings do not justify the judgment entered. If it is to be sustained it will have to be on the basis of the evidence, and so this leads us to a review of plaintiff's claim from the standpoint of the essential elements of proof required by law.

■ To begin with it is important to note that there is no recorded evidence the defendant ever refused to close the deal. Though there was evidence that Mr. Ferguson did encounter some family obligation problems during the 1984–85 Christmas holiday season which caused him to request a couple of extensions, no one contended in the trial court nor is there any dispute about the fact that defendant Ferguson was at all times ready, willing and able to consummate the transaction in the sense that he wanted the property at the agreed price and he had the funds with which to pay the purchase price. This means, then, that the evidence will not support a finding that defendant breached any term of the written sales contract—the basis of plaintiff's claim.

The second evidentiary problem facing plaintiff concerns his proof of detriment. If, for instance, we were to assume a material breach of the contract by the defendant, the element of legal detriment suffered by plaintiff remains unproved. This defect alone is fatal to plaintiff's claim. Paragraph 8(a) of the written sales contract provides that "the Earnest Money shall be forfeited as liquidated damages to the Seller" if buyer wrongfully refuses to close. Such provision is made void by 15 O.S.1981 § 214 except in situations where the nature of the case is such that it is impracticable or extremely difficult to fix the actual damage. 15 O.S.1981 § 215. We pointed out in *Reid v. Auxier*, 690 P.2d 1057 (Okl.App.1984), that the detriment for breach of an agreement to buy an interest in real estate is statutorily established in 23 O.S.1981 § 28 as the amount due the seller under the contract less the value of the property. That amount, we held in *Reid*, was not impracticable or extremely difficult to fix. There is no proof of such detriment in this case.[5]

■ And finally no evidentiary foundation or legal justification for the attorney fee judgment granted plaintiff was laid or even attempted. *See Burk v. City of Oklahoma City*, 598 P.2d 659 (Okl.1979).

■ This leaves for determination the second major claim in the lawsuit and that is defendant's plea for specific performance. The most that can be charged against defendant Ferguson is that there was a failure to honor an oral post-contract closing date agreement, and whether he did or not depends on a weighing of the evi-

---

5. 15 O.S.1981 §§ 214 and 215 were amended in 1984 in an effort to create an exception for real estate contracts.

dence. As we view the evidence the weight seems to favor an inference that plaintiff rather than defendant was the one who forsook the purchase pact. Such inference may be drawn from the fact of plaintiff's precipitative action in hastily insisting on the $10,000 earnest money instead of laying a foundation for the resolution of the possible misunderstanding by serving written notice of a definite closing date on Ferguson or by otherwise performing the agreement.

With regard to the issue of what happened on January 2, the clear weight of the evidence is that Kellum did agree to the January 11 date or at least defendant was led to believe that date was agreeable. Defendant's mailing of the January 3 interest check corroborates this. The most that can be said for plaintiff's position is that either he became upset upon learning of the extension to January 11 and renigged on the Kellum promise, or, if indeed he thought there was no such promise, he was on notice that a possible misunderstanding had occurred which required an immediate straightening out in writing before reaching for the $10,000. If the former is the fact then plaintiff's attempt to reject an extension his agent had agreed to—with ostensible if not actual authority—was inexcusable. If it was the latter then he was obligated to clarify the ambiguity with a written notice of a final closing date before rescinding his agreement to sell. Shaw's immediate effort to garner the ear-nest money chip from the investment table suggests he was more interested in the earnest money than in consummating the transaction.

### III

We conclude that the evidence will not support a judgment in favor of the plaintiff but does support one for specific performance in favor of the defendant. The judgment appealed is vacated and the cause is remanded with directions to enter a decree directing the seller to specifically perform the written contract and to issue appropriate orders setting a specific closing date and otherwise protecting the legal, equitable and contractual rights of both parties, including those relating to attorney fees and other litigation expenses prescribed in paragraphs 8(b) and (c) of the sales agreement.[6]

BACON and RAPP, JJ., concur.

6. At oral argument mention was made of the seller's construction of a hard surface road on subject property after refusing to perform the contract. Under the view we have taken of the rights of the parties it appears that seller built the road at his peril and at the risk of the improvement being subordinate to the equitable rights of the purchaser.